**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re WASTE MANAGEMENT SECURITIES
LITIGATION

Case No. 1:22-cv-04838-LGS

(Oral Argument Request)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**EXCLUDE THE OPINIONS AND TESTIMONY OF DR. STEVEN FEINSTEIN**

BAKER BOTTS L.L.P.

David D. Sterling (admitted *pro hac vice*)
Amy Pharr Hefley
910 Louisiana Street
Houston, Texas 77002

James J. Beha II
30 Rockefeller Plaza
New York, New York 10112

**Attorneys for Defendants**

**TABLE OF CONTENTS**

**CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ……………………………………………………………………………....2

ARGUMENT …………………………………………………………………………………….3

I.      Dr. Feinstein's event study is biased, methodologically unsound, and unreliable. .............4

    B.  Dr. Feinstein's examination of a single event date cannot reliably establish market efficiency...........................................................................................................................6

    C.  Dr. Feinstein's selection of a corrective disclosure date as his single event is biased, unscientific, and unreliable. ..................................................................................7

    D.  Price movement following the June 24 announcement cannot support a finding of market efficiency throughout the alleged class period. .......................................................8

    E.  Dr. Feinstein's use of volume-weighted average prices to calculate daily returns is unscientific and inconsistent with a finding of market efficiency. .....................................8

II.     Dr. Feinstein's improper legal opinions are unhelpful and inadmissible .........................10

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)..................................................................................................4, 9

*Bell v. Ascendant Solutions, Inc.*,
  422 F.3d 307 (5th Cir. 2005) ....................................................................................................6

*Bell v. Ascendant Solutions, Inc.*,
  2004 WL 1490009 (N.D. Tex. July 1, 2004)........................................................................5, 7

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
  752 F.3d 82 (1st Cir. 2014)........................................................................................................5

*Brown v. China Integrated Energy Inc.*,
  2014 WL 12576643 (C.D. Cal. Aug. 4, 2014).......................................................................4, 5

*George v. China Auto. Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ..............................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)................................................................................................................3, 4

*DoubleLine Capital LP v. Odebrecht Fin. Ltd.*,
  2024 WL 1115944 (S.D.N.Y. Mar. 14, 2024) ..........................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)....................................................................................................................9

*Gariety v. Grant Thornton LLP*,
  368 F.3d 356 (4th Cir. 2004) .....................................................................................................8

*In re Am. Realty Capital Props. Inc.*,
  1:15-mc-00040-AKH (S.D.N.Y.) (ECF No. 508-7) ..................................................................6

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009)...............................................................................................4

*In re Diamond Foods, Inc., Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013)...............................................................................................6

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig*,
  281 F.R.D. 174 (S.D.N.Y. 2014) ...........................................................................................1, 3

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   407 F. Supp. 3d 422 (S.D.N.Y. 2019).................................................................................4

*In re Northfield Labs., Inc. Sec. Litig.*,
   267 F.R.D. 536 (N.D. Ill. 2010).........................................................................................7

*In re PolyMedica Corp. Sec. Litig.*,
   453 F. Supp. 2d 260 (D. Mass. 2006) ................................................................................6

*In re Vale S.A. Sec. Litig.*,
   2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ...............................................................2, 4, 5, 7

*Ohio Pub. Emply. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)...........................................................2, 6, 7, 8

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   333 F.R.D. 39 (S.D.N.Y. 2019) ..........................................................................................7

## OTHER AUTHORITIES

Ferrillo, et al., *The "Less Than" Efficient Capital Markets Hypothesis: Requiring More Proof
   From Plaintiffs in Fraud-On-The-Market Cases*, 78 St. John's L. Rev. 81 (2004) ..................6

## INTRODUCTION

To certify this case as a class action, the Seafarers Funds must "show that the price of [the Notes] consistently responded to unexpected, material news" throughout the alleged class period. *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig*, 281 F.R.D. 174, 178 (S.D.N.Y. 2014). They attempt to make this showing through the expert opinions of Dr. Steven T. Feinstein, including an event study that purports to show the price of Waste Management's SMR Notes responded efficiently to new information during the alleged class period. But Dr. Feinstein's analysis is biased, unscientific, and unreliable, and, therefore, inadmissible.

First, Dr. Feinstein fails to articulate any objective, testable criteria for his selection of event dates. His subjective, unscientific "methodology" renders his entire analysis unreliable.

Second, Dr. Feinstein's event study examines only a single "event date"—the end of the alleged class period. But price movement in response to news on only one day cannot establish efficiency throughout a months-long period. And the decision to test an alleged corrective disclosure date improperly biases Feinstein's analysis in favor of a finding of market efficiency.

Third, Dr. Feinstein finds a cause-and-effect relationship between new information and price movements only because he deviates from standard event study methodology, ignores publicly published closing prices, and uses volume-weighted average prices instead. He identifies no economic authority endorsing this approach. And his rationale for doing so—to give more weight to trades that more "accurately reflect the underlying price"—cannot be reconciled with a finding of market efficiency.

Finally, Dr. Feinstein attempts to mask his deficient analysis with improper legal opinions about the legal standard for market efficiency and a bald conclusion that "if one were to view my work on that standard, it would pass."

The Court should exclude or disregard Dr. Feinstein's flawed, unscientific, and unreliable

opinions, as other courts have under similar circumstances. *See, e.g., Ohio Pub. Emply. Ret. Sys.*

*v. Fed. Home Loan Mortg. Corp.* ("*OPERS*"), 2018 WL 3861840, at *2-7 (N.D. Ohio Aug. 14,

2018) (excluding Dr. Feinstein's event study); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, *13

(E.D.N.Y. Jan. 11, 2022) (according no weight to Dr. Feinstein's event study).

## BACKGROUND

Dr. Feinstein is a professor of finance at Babson College and a professional expert witness

who has frequently opined on market efficiency for securities class action plaintiffs for almost 30

years. Ex. 1 (Feinstein Tr.) at 34:5-14. In recent years, securities plaintiffs' lawyers have paid

Dr. Feinstein millions of dollars to testify about market efficiency. *Id.* at 45:22-46:13. Every time

he has assessed market efficiency, he has found an efficient market. *Id.* at 42:10-15. While some

courts have admitted Dr. Feinstein's opinions, several have excluded or discounted his testimony,

finding it unreliable, speculative, and biased:

- In *Finkelstein v. Liberty Digital, Inc.*, the court criticized Dr. Feinstein's "Fantasy Island" approach and his "speculative and aggressive" valuation opinions, finding that "Feinstein's assumptions b[ore] no relationship to reality" and his testimony did "not inspire confidence in [his] objectivity" and "smack[ed] of a stubborn desire to stick to a pre-conceived [outcome] regardless of the facts." 2005 WL 1074364, *14-*15, *17 n.31 (Del. Ch. Apr. 25, 2005) (finding "so many problems with Feinstein's analysis that it is impossible to address them all").

- In *OPERS*, the court denied class certification after excluding Dr. Feinstein's opinions, finding "numerous fundamental design problems…infect[ed]" both his event study and his damages model. 2018 WL 3861840, at *2-7.

- In *Sicav v. Wang*, the court rejected Dr. Feinstein's damages model, finding that "Dr. Feinstein d[id] not undertake a close analysis, or indeed any analysis, of" the facts "at issue *in this case*." 2015 WL 268855, at *4-6 (S.D.N.Y. Jan. 21, 2015) (emphasis in original).

- In *Vale*, the court found it "impossible to accord any weight to [Feinstein's] event study" given his "black-box like, unverifiable, standardless, and subjective methodology." 2022 WL 122593, *13.

- In *In re Kirkland Lake Gold Sec. Litig.*, the court found Feinstein's opinions "of little probative value" because his analysis was "undermined by his factual assumptions" and "fatally misunderst[ood] the analytical framework." 2024 WL 1342800, at *10 (S.D.N.Y. March 29, 2024).

Dr. Feinstein's event study here is similarly flawed and unreliable.

When conducting an event study "[f]or the purpose of showing market efficiency," an expert first identifies "event dates," "on which unexpected, important news entered the market" and then compares "[t]he actual price of the security during the event" to "the expected price, which is calculated based on the security's historical relationship to a market index." *Freddie Mac*, 281 F.R.D. at 178. "In an efficient market," prices "should show statistically significant abnormal returns on days in which unexpected, material information is released into the market." *Id.*

In his event study here, Dr. Feinstein tested only one event date—June 24, 2020, when WM announced that the merger would not close by the End Date. Feinstein Rpt. ¶ 160. Dr. Feinstein explained that, "[t]o identify potential event dates," he "reviewed all Company news and analyst reports during and immediately following the Class Period," and his "review and analysis indicated that the information announced on 24 June 2020 was the only event that was of such import as to reasonably be expected to elicit a security price reaction over the threshold for statistical significance according to theoretical valuation principles." *Id.* ¶ 160. Because Dr. Feinstein found statistically significant declines in the prices of all four series of the Notes on June 24, 2020, he concluded that his event study "demonstrated the efficiency of the market in which the Notes traded" throughout the entire four-month alleged class period. *Id.* ¶ 147.

## ARGUMENT

Under Rule 702 and *Daubert*, the trial court plays a crucial "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). When assessing the reliability of expert testimony, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the

3

product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702).

Courts in the Second Circuit "regularly subject expert testimony to *Daubert*'s rigorous standards insofar as that testimony is relevant to the Rule 23 class certification analysis.'" *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 429 (S.D.N.Y. 2019).

**I.      Dr. Feinstein's event study is biased, methodologically unsound, and unreliable.**

Whether a "particular event study is sufficiently reliable … is a question for the Court exercising its gatekeeping function under Rule 702 and *Daubert*." *DoubleLine Capital LP v. Odebrecht Fin. Ltd.*, 2024 WL 1115944, at *4 (S.D.N.Y. Mar. 14, 2024). "An event study may be rejected" if "it is methodologically unsound or unreliable." *Bombardier*, 546 F.3d at 208, n.15.

**A.      Dr. Feinstein's subjective selection of his event date is unreliable.**

"It should be obvious, even to those without a background in statistics or econometrics, that the events for study should be selected using criteria that are as objective as possible." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 618 n.97 (C.D. Cal. 2009). While "subjective criteria" may be used "to select events for study, … those criteria must be articulated and designed in a manner to reduce subjectivity as much as possible." *Vale*, 2022 WL 122593, at *13; *see also Brown v. China Integrated Energy Inc.*, 2014 WL 12576643, at *7 (C.D. Cal. Aug. 4, 2014) ("a reliable event study must begin by objectively identifying events that will later be examined").

Dr. Feinstein utterly fails to articulate any objective criteria for his decision to study June 24, 2020. He merely asserts in conclusory terms that the news that day "was the only event … of such import as to reasonably be expected to elicit a security price reaction over the threshold for statistical significance according to theoretical valuation principles." Feinstein Rpt. ¶ 160. But whether information is "of the import necessary to change the price of [a security] is not objective."

4

*Brown*, 2014 WL 12576643, at \*7. And Dr. Feinstein provides **no** explanation for his decision to exclude other potential candidates for testing, including March 18, 2020, when, according to the Complaint, the announcement of a delay in the expected timing for regulatory approval of the ADS merger "cause[d] the prices of the Notes to decline significantly." Compl. ¶ 110. When asked about his decision to exclude March 18, Dr. Feinstein testified that he "studied that date carefully," "thought good and hard about it," "had discussion with [his] team about it," and "came to the conclusion that it was so mixed, it could not be an event study candidate event." Ex. 1 at 122:17-25. But Dr. Feinstein articulates no objective standards that he applied in reaching that conclusion.

As in *Vale*, "Feinstein talks about selecting dates based upon 'generally accepted principles of valuation,'" but he "does not identify or cite to them." 2022 WL 122593, at \*12. And, "for the events that he excluded," he "provides no detailed explanation … why those news announcements were not worthy of inclusion" beyond "conclusory top-level descriptions of the methodology." *Id.* In short, Dr. Feinstein follows the same "black-box-like, unverifiable, standardless, and subjective methodology" that led the *Vale* court to find his "event study [was] entitled to no weight." *Id.*

Numerous other courts have found this type of "subjective determination of which events to examine" rendered expert event studies unreliable. *Brown*, 2014 WL 12576643, at \*7; *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 95 (1st Cir. 2014) (event study excluded because "selection criteria were so vague that two different economists would be apt to pick vastly different … dates given the same instructions"); *Bell v. Ascendant Solutions, Inc.*, 2004 WL 1490009, at\* (N.D. Tex. July 1, 2004) (expert's "seemingly *ad hoc* use of 'information days' … compels the Court to find his testimony unreliable"). The Court should do the same here.

**B.**    **Dr. Feinstein's examination of a single event date cannot reliably establish market efficiency.**

When assessing event study evidence, a key consideration is "whether the study is based on a sufficiently large number of observations." *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 249 (N.D. Cal. 2013). Courts frequently exclude or disregard event studies based on an insufficient number of events. *See George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *12 (S.D.N.Y. July 3, 2013) (price reaction on seven days "insufficient … to pronounce market efficiency"); *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 278 (D. Mass. 2006) (evidence of price movement on five days "is not a scientific analysis of the relationship between news and stock price"). Economists agree that "[m]erely demonstrating a single or small number of cases where there is an apparent cause and effect relationship is not enough, since this measure only one point in time during the class period." Ex. 2 (Ferrillo, et al., *The "Less Than" Efficient Capital Markets Hypothesis: Requiring More Proof From Plaintiffs in Fraud-On-The-Market Cases*, 78 St. John's L. Rev. 81 (2004)), at 128.

Multiple courts have rejected Dr. Feinstein's event studies examining only a single event date. *See OPERS*, 2018 WL 3861840, at *2 (market efficiency "cannot be assessed based upon a lone stock price reaction to news that concludes the class period"); Ex. 3 (*In re Am. Realty Capital Props. Inc.* ("*ARCP*"), 1:15-mc-00040-AKH (S.D.N.Y.) (ECF No. 516); *see also Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 316 (5th Cir. 2005) ("single decline on the last day of the class period is plainly insufficient"). In *OPERS*, the court found "Dr. Feinstein's opinions based on his single-date event study [we]re based on insufficient facts," noting that he failed to "cite any economic principle or economic authority that supports the proposition that an event study of a single date could possibly establish that a market is efficient" over a months-long class period. 2018 WL 3861840, at *2.

6

In *ARCP*, Dr. Feinstein conducted event studies of ARCP preferred stock and bonds that tested only the last day of the alleged class period, October 29, 2014. *See* Ex. 4 (Feinstein ARCP Report) (ECF No. 474-2) ¶¶ 215, 280. The court found, "[a]s to the preferred and the debt," that the "price movement following the 8-K of October 29, 2014" was "not proof sufficient to go backward in time." Ex. 3 at 143:17-25. The court explained that Feinstein's opinions rested on a logical fallacy: "The Latin notion is *post hoc ergo propter hoc* which is a proposition of logic that doesn't follow. That is to say, just because it happened now doesn't mean it happened before." *Id.*

The Court should exclude Dr. Feinstein's single-date event study for the same reasons.

### C.     Dr. Feinstein's selection of a corrective disclosure date as his single event is biased, unscientific, and unreliable.

Even if price movement on a single date could provide evidence of efficiency in some circumstances, "using the last day of a class period is not a scientifically valid way to test for market efficiency because securities [p]laintiffs intentionally select such dates for purposes of increasing potential damages." *OPERS*, 2018 WL 3861840, at *2. Dr. Feinstein's choice of this date—which the Seafarers Funds selected precisely because the price declined—improperly "skews" his analysis "toward a conclusion that the market was efficient," further undercutting its reliability. *In re Northfield Labs., Inc. Sec. Litig.*, 267 F.R.D. 536, 548 (N.D. Ill. 2010); *Bell*, 2004 WL 14900009, at *3 (N.D. Tex. July 1, 2004) (finding event study unreliable where expert selected "dates that appear to be consciously chosen … to artificially support his hypothesis of efficiency"); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 53 (S.D.N.Y. 2019) ("SQM claims that the analysis of [the last day of the alleged class period] is cherry-picking. The Court agrees.").

Dr. Feinstein's decision ***not*** to study the other alleged corrective disclosure date (March 18) raises similar concerns about cherry-picking. Without any objective basis for excluding this date, one can only assume Dr. Feinstein did not study this date because doing so would not have

7

supported a finding of efficiency. Allen Rpt. ¶¶ 32-33; *see also Vale*, 2022 WL 122593, at *13

("lack of clarity" as to event selection criteria "heighten[ed] the force of [ ] criticisms" of

Feinstein's "use of only four dates in the event study").

Feinstein claims he chose to study June 24, 2020—and not to study March 18, 2020—

before seeing the regression analysis. *See* Ex. 1 at 155:1-6. But he admits he discussed his selection

of event dates with members of his team who *had* seen results. *Id.* at 131:8-132:14. Thus, his event

date selection "was entirely improper because you are supposed to hypothesize and then see your

results. You are not supposed to know your results in advance." 2018 WL 3861840, at *7.

**D.      Price movement following the June 24 announcement cannot support a finding of market efficiency throughout the alleged class period.**

According to Dr. Feinstein, the Note prices were "[h]ighly dependent" on "the market's …

understanding of whether or not the merger would close by the end date." Ex. 1 at 93:10-19. If Dr.

Feinstein were correct, then the announcement that the merger would *not* close by the End Date

and that the Notes would be redeemed was extraordinary news (at least for Notes investors). A

price reaction to such an event reflects "the assimilation of market information at its grossest

level," which, "standing alone, does not represent adequate evidence that" the Notes traded "in an

efficient market." *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 368 (4th Cir. 2004).

**E.      Dr. Feinstein's use of volume-weighted average prices to calculate daily returns is unscientific and inconsistent with a finding of market efficiency.**

Under standard event study methodology, daily returns are measured using closing prices.

Allen Rpt. ¶¶ 19-24. But Dr. Feinstein ignored the standard methodology and calculated daily

returns based on volume-weighted average prices for all trades during market hours ("VWAP").

It is only because he did so that Dr. Feinstein found a cause-and-effect relationship between release

of information and price movements even on the single event date he tested. Allen Rpt. ¶¶ 33-35.

The Funds argue that Dr. Feinstein's use of volume-weighted prices is "accepted

8

methodology for determining bond prices for purposes of measuring market efficiency" because "Dr. Feinstein routinely uses VWAP to calculate daily bond returns." ECF No. 108 at 5. But his past practice as a paid expert in litigation cannot substitute for evidence that his method "has been subjected to peer review'" or "gained 'general acceptance' in the relevant scientific community." *Amorgianos*, 303 F.3d at 266. Dr. Feinstein cannot identify **any** economic authority endorsing his use of VWAPs in an event study assessing market efficiency. Ex. 1 at 163:25-164:14; 165:22-25.

Dr. Feinstein cites an academic study concluding that VWAPs are a preferable measure of bond returns because they "'put[] more weight on the institutional trades" that "more accurately reflect the underlying price of the bond,'" while closing prices "'could introduce excessive noise on days when the last trade is small.'" Feinstein Rebuttal Rpt. ¶ 155 (quoting Bessembinder, "Measuring Abnormal Bond Performance," *Review of Financial Studies* (2009)). But the notion that some trades more "accurately reflect the underlying price" while others merely reflect "noise" cannot be squared with "*Basic*'s fundamental premise"—the presumption that all material information "was reflected in the market price at the time of [each class-member's] transaction." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011).

Trading of the 4.0% Notes on June 24 shows the use of VWAPs is unreliable. On June 23, the Notes closed at $110.40. At 8:52 a.m. on June 24, WM announced the Notes would be redeemed. The Notes then traded above the prior day's price during the day—trading as high as $112.00 that morning before closing at $110.70. Allen Rpt. ¶¶ 34-36. Dr. Feinstein nonetheless finds a price decline on June 24, 2020 based on the VWAP of $107.10. *Id.*

9



Even if Feinstein were right that VWAP "more accurately reflects the underlying price," that would mean most trades were made at "inaccurate" prices, the antithesis of an efficient market.

## II.    Dr. Feinstein's improper legal opinions are unhelpful and inadmissible.

Dr. Feinstein repeatedly offers improper opinions about the legal standards that, according to Dr. Feinstein, "[c]ourts in the Second Circuit have … applied" and the evidence "[c]ourts in the Second Circuit have accepted" when evaluating market efficiency. *See* ECF No. 103-2 ¶¶ 70-73, 145. At his deposition, Dr. Feinstein explained that he "know[s] what courts have asked" and "described in this report that if *one were to judge my work on that standard, it would pass*." Ex. 1 at 65:15-66:8. Dr. Feinstein's legal opinions are improper and inadmissible.

## CONCLUSION

The Court should exclude Dr. Feinstein's unreliable opinions and disregard them when deciding the Seafarers Funds' Motion for Class Certification.

Dated:  October 29, 2024

Respectfully submitted,

BAKER BOTTS L.L.P.

By*:  /s/ David D. Sterling*
    David D. Sterling
    Amy Pharr Hefley
    910 Louisiana Street
    Houston, Texas 77002
    Tel:  (713) 229-1946
    Fax: (713) 229-7946
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com

    James J. Beha II
    30 Rockefeller Plaza
    New York, New York 10112
    Tel:  (212) 408-2510
    Fax: (212) 259-2510
    jim.beha@bakerbotts.com

    **ATTORNEYS FOR DEFENDANTS**

11