# EXHIBIT 4

Case 1:15-mc-00040-AKH   Document 474-2   Filed 08/18/17   Page 1 of 263

# EXHIBIT 2

Case 1:15-mc-00040-AKH   Document 474-2   Filed 08/18/17   Page 1 of 263

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re AMERICAN REALTY CAPITAL
PROPERTIES, INC. LITIGATION

Civil Action No. 1:15-mc-00040-AKH

REPORT ON MARKET EFFICIENCY

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

March 15, 2017

## IX.    EMPIRICAL EVIDENCE OF MARKET EFFICIENCY FOR ARCP PREFERRED STOCK

214.    To test the efficiency of the market for preferred stock, I conducted the same allegation-related event study that I conducted on the common stock.  The test was necessarily conducted over the preferred stock examination period.

215.    As explained above, on account of the equity buffer provided by the common stock, preferred stock tends to be less sensitive to company information than is common stock. Typically, only the most dramatic news affects the valuation of preferred stock to a major degree. As such, the numerous 8-K events I used to test the efficiency of the market for the ARCP common shares would not be reasonable candidates for a study of preferred stock market efficiency. The information reported in most of the 8-Ks was of only moderate importance to ARCP preferred stock investors, and reasonably would have only slight impact on the valuation of the preferred stock, rather than eliciting statistically significant price changes. Consequently, I performed the event study on the allegation-related event, as it was a day on which new information was released that could reasonably have significantly altered the markets' expectations regarding ARCP's ability to pay its preferred dividend.

216.    The regression estimation period I used for the preferred stock was from 7 January 2014 to 29 October 2014, or the preferred stock examination period, which is the portion of the Class Period the preferred stock was outstanding. My regression model for the ARCP preferred stock included the same variables used in the regression model for the common stock, plus an additional variable consisting of a preferred stock index return to control for any potential preferred stock factor effect.

217.    I included the S&P Preferred Stock Index ("Preferred Index") in the preferred stock regression model.  This index is a value-weighted average of a broad selection of preferred stock issues. The index level and return of the Preferred Index are presented in Exhibit-7.

218.    Therefore, the regression I ran modelled the return of ARCP preferred stock as a function of: 1) a constant term, 2) the Market Index, 3) the Peer Index and 4) the Preferred Index.

219.    The regression analysis isolates the impact of Company-specific information on ARCP's preferred shares, removing the various market-wide and peer group effects.

220.    ARCP preferred stock prices, trading volume, and returns are shown in Exhibit -11.

## XI.    EMPIRICAL EVIDENCE OF ARCP NOTES MARKET EFFICIENCY

278.    To address the empirical factor and determine whether the prices of the ARCP Notes reacted appropriately to new information, I performed an event study test on the price reaction of the ARCP Notes to the allegation-related event.

279.    Because of their senior status, bond values are substantially insulated from all but the most extreme news by a valuation cushion provided by the common and preferred stock. As a result, bonds are the least sensitive of all securities to firm specific news while being the most sensitive to a change in a firm's probability of default.[134] When new common or preferred stock is issued, the cushion is increased and the valuation sensitivity of bonds to Company news is further reduced.

280.    As such, the 8-K events I used to test the efficiency of the market for the ARCP common shares would not, collectively, constitute good candidates for a market efficiency study on the ARCP Notes. The information reported in most of the 8-Ks was of only moderate importance to ARCP Note investors, and reasonably would have only slight impact on the valuation of the Notes, rather than eliciting statistically significant price changes. Consequently, I performed the event study on the allegation-related event, as it was a day on which new information was released that could reasonably have significantly altered the markets' expectations regarding ARCP's ability to repay its debts.

### A.    Note Regression Analysis

281.    As shown in Appendix-1, all of the ARCP Notes were fixed-rate notes. To compute ARCP Notes' residual returns and control for changing interest rates, for each note, I ran a regression modeling the daily return of the note as a function of: 1) a constant term, 2) the Market Index, 3) the Peer Index, and 5) the return of a market benchmark bond ("Benchmark Bond").

282.    The daily returns of the Benchmark Bond were computed by pricing each day a hypothetical bond with the same coupon and maturity as the respective ARCP note, applying the yield-to-maturity from a market index matched to the Company's credit rating. The market index yield was drawn from the BofA Merrill Lynch US Corporate

---

[134] See, "Understanding the Efficiency of the Market for Preferred Stock," by Michael Hartzmark and H. Nejat Seyhun, *Virgina Law and Business Review*, Spring 2014, pp. 9-10.