UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

In re WASTE MANAGEMENT SECURITIES :   Civil Action No. 1:22-cv-04838-LGS
LITIGATION                               :

                                           :   <u>CLASS ACTION</u>

                                           :

                                           :

                                           :

                                           :

                                           :

———————————————————————— x

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................2

I.      The Court Should Reject Defendants' Superfluous *Daubert* Motion................................2

II.     Defendants' Attacks on Dr. Feinstein's Event Study Are Meritless ..................................3

             1.      Dr. Feinstein Uses Reasonable Discretion to Construct a Reliable and Objective Event Study............................................................................4

             2.      VWAPs Are a Reliable Method of Measuring Daily Bond Prices..............9

III.    Dr. Feinstein Does Not Offer a Legal Opinion....................................................................10

IV.     Conclusion .........................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell v. Ascendant Sols., Inc.*,
422 F.3d 307 (5th Cir. 2005) ..................................................................................................8

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ....................................................................................................6

*Brown v. China Integrated Energy Inc.*,
2014 WL 12576643
(C.D. Cal. Aug. 4, 2014) .........................................................................................................6

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
2008 WL 4737173
(N.D. Ga. Mar. 14, 2018) ......................................................................................................10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ......................................................................................2, 4, 6

*Cates v. Trs. of Columbia Univ. in City of N.Y.*,
2019 WL 8955333
(S.D.N.Y. Oct. 25, 2019) .........................................................................................................4

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
2024 WL 1115944
(S.D.N.Y. Mar. 14, 2024) ........................................................................................................6

*Gariety v. Grant Thornton, LLP*,
368 F.3d 356 (4th Cir. 2004) ..................................................................................................8

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942
(S.D.N.Y. Sept. 8, 2021) ......................................................................................................2, 3

*In re Am. Realty Cap. Props., Inc. Litig.*,
2017 WL 3835881
(S.D.N.Y. Aug. 31, 2017) .....................................................................................................7, 9

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) .......................................................................................3, 6, 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084
(S.D.N.Y. July 10, 2019) .........................................................................................................3

**Page**

*In re Teva Sec. Litig.*,
   2021 WL 872156
   (D. Conn. Mar. 9, 2021)...................................................................................................6

*In re Vale S.A. Sec. Litig.*,
   2022 WL 122593
   (E.D.N.Y. Jan. 11, 2022) ................................................................................................4

*In re Vale S.A. Sec. Litig.*,
   2022 WL 969724
   (E.D.N.Y. Mar. 31, 2022) ...............................................................................................8

*Martinek v. AmTrust Fin. Servs., Inc.*,
   2022 WL 326320
   (S.D.N.Y. Feb. 3, 2022) ................................................................................................7, 9

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014)..............................................................................4, 6

*Plumbers & Pipefitters, Nat'l Pension Fund v. Burns*,
   967 F. Supp. 2d 1143 (N.D. Ohio 2013)........................................................................7, 8

*Ohio Pub. Emp. Ret. Sys. Fed. Home Loan Mortg. Corp.*,
   2018 WL 3861840
   (N.D. Ohio Aug. 14, 2018) .............................................................................................8

*Shupe v. Rocket Co., Inc.*,
   2024 WL 4349171
   (E.D. Mich. Sept. 30, 2024)..........................................................................................10

The Court should reject Defendants' meritless *Daubert* motion and certify the Class.[1] Lead Plaintiffs seek class certification on behalf of investors in $3 billion worth of Notes issued by Waste Management in connection with its acquisition of ADS. Waste Management is the leading waste management company in the United States, is a member of the S&P 500 with over $40 billion in market capitalization, and its operations are followed closely by the media, securities analysts, and the investing public. Waste Management's acquisition of ADS was a significant transaction within the waste management industry, and was likewise the subject of significant public reporting. The Notes were issued through major Wall Street underwriters, traded at high volumes, and otherwise bear all the indicia of an efficient market for debt securities.

Throughout the Class Period, Defendants' false statements "created an impression that the acquisition would be approved before the End Date when Defendants knew the acquisition was likely to be delayed due to the DOJ's objections." MTD Opinion & Order at 8 (ECF No. 58). This was "material to Notes investors because a merger delay would trigger the special mandatory redemption feature of the Notes that required WM to redeem the Notes at 101% of par, thus affecting the trading price of the Notes." *Id*. As a result, the Notes consistently traded (and were maintained) at artificially inflated prices above the redemption price, fluctuated in accordance with interest rates (as would be expected of efficiently-traded senior investment-grade debt from a large well-capitalized issuer like Waste Management), and ultimately experienced statistically significant price declines on June 24, 2020, when Defendants announced that they would trigger the SMR. Lead Plaintiffs have more than carried their burden to show market efficiency and Defendants have no basis to rebut the *Basic* presumption. The Court should therefore grant class

---

[1] All capitalized terms that are not defined herein have the same meanings as ascribed to them in Lead Plaintiffs' opening brief in support of class certification (ECF No. 102) (the "Opening Br.") and Lead Plaintiffs' reply brief in support of class certification (ECF No. 108) (the "Reply Br."). "Def. Br." refers to Defendants' brief in support of their motion to exclude. ECF No. 120.

certification, and should deny Defendants' *Daubert* motion for at least the following reasons.

*First*, in light of Lead Plaintiffs' overwhelming showing of market efficiency, Defendants' motion is superfluous to the outcome of the underlying class certification motion and the Court can readily certify the Class in this case without ever addressing tangential *Daubert* arguments. *Second*, Dr. Feinstein's event study analysis of company-specific news is reliable evidence probative of market efficiency, and the Court should reject Defendants' meritless effort to manufacture an argument for exclusion. *Finally*, Dr. Feinstein offers opinions on economic tests of market efficiency, and his reference to cases applying those economic tests does not convert his opinions regarding economics into legal ones.

## ARGUMENT

### I.    The Court Should Reject Defendants' Superfluous *Daubert* Motion

Defendants' motion is unnecessary to the outcome of the underlying class certification motion because the Court can readily certify the Class without delving into Defendants' extraneous *Daubert* arguments. *See, e.g.*, *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 86 (S.D.N.Y. 2015) ("*Barclays*") (Scheindlin, J.) ("In the usual case of . . . highly traded and analyzed [securities] there is no reason to burden the court with review of an event study and the opposing expert's attack of it.").

Defendants never ask the Court to exclude – and raise no serious argument concerning – Lead Plaintiffs' substantial showing of market efficiency under all of the other factors (*i.e.*, *Cammer* 1-4 and *Krogman* 1-3). *See* Opening Br. at 13-21; Reply Br. at 1-4; Feinstein Rpt. ¶¶75-142; Feinstein Reb. Rpt. ¶¶35-118. These factors alone establish market efficiency. *See, e.g.*, *Barclays*, 310 F.R.D. at 87 (rejecting *Daubert* challenge focused "almost exclusively on the event studies . . . performed in connection with *Cammer* 5" as "too narrow" and certifying class based on the other market efficiency factors); *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *10

- 2 -

(S.D.N.Y. Sept. 8, 2021) (when the indirect factors "so strongly support a presumption of market efficiency" this "obviates the need to examine the empirical evidence necessary to evaluate the fifth *Cammer* factor"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *13 (S.D.N.Y. July 10, 2019) (where the indirect *Cammer* and *Krogman* factors "point toward market efficiency, a court can dispose of *Cammer*'s fifth factor completely").

Defendants also do not ask the Court to exclude – and their voluminous papers never even mention – Dr. Feinstein's additional interest rate-focused event study regression analysis, which demonstrates a highly statistically significant relationship between interest rate movements and the Notes' pricing.  Opening Br. at 18; Reply Br. at 5; Feinstein Rpt. ¶¶196-200; Feinstein Reb. Rpt. ¶¶6, 120, 130.  Dr. Feinstein's analysis of the Notes' responsiveness to interest rates is thus independent, uncontradicted, empirical evidence of market efficiency (*i.e.*, *Cammer* 5).  *See, e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 368 (S.D.N.Y. 2016) ("[T]he results of Feinstein's regression analysis on the Petrobras Notes showed that the fixed-rate Petrobras bonds moved in response to market interest rates, indicating the market for Petrobras Notes was efficient[.]").

In short, the overwhelming showing of market efficiency here obviates Defendants' narrow *Daubert* motion, and the Court can simply disregard the motion and certify the Class.

## II.    Defendants' Attacks on Dr. Feinstein's Event Study Are Meritless

Dr. Feinstein's event study of company-specific news is reliable additional evidence of market efficiency, demonstrating that the Notes reacted to new material information through statistically significant price declines in response to Defendants' June 24, 2020 corrective disclosure that they would trigger the SMR.  The Court should consider this probative evidence along with all the other evidence of market efficiency and reject Defendants' effort to exclude it.

Defendants offer little more than regurgitated arguments from their class certification opposition papers, but these arguments fare no better under *Daubert*.  Indeed, Defendants hardly

bother to ground their argument in *Daubert* case law at all, perhaps because "the Second Circuit favors an inclusive approach to the admission of expert testimony, [and] *Daubert* contemplates 'liberal admissibility standards' and 'reinforces the idea that there should be a presumption of admissibility of evidence.'" *Barclays*, 310 F.R.D. at 76; *see also Cates v. Trs. of Columbia Univ. in City of N.Y.*, 2019 WL 8955333, at *6 (S.D.N.Y. Oct. 25, 2019) ("There is a presumption that expert testimony is admissible . . . and the rejection of [such] testimony is the exception rather than the rule."). Defendants' principal in-circuit authority even explains that their arguments "go to weight, not admissibility" under *Daubert*. *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *14 (E.D.N.Y. Jan. 11, 2022) (certifying bondholder class based on the indirect efficiency factors alone); *see also McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 431 (S.D.N.Y. 2014) (denying *Daubert* motion and finding objections to event study went to weight not admissibility); *Barclays*, 310 F.R.D. at 90 (denying *Daubert* motion and finding defendants' event study objections went to weight not admissibility).

### 1.    Dr. Feinstein Uses Reasonable Discretion to Construct a Reliable and Objective Event Study

Dr. Feinstein's event study is helpful, reliable, and objective expert evidence probative of market efficiency. Defendants' baseless attacks revolve around Dr. Feinstein's testing of the Notes' price response on June 24, 2020, when Defendants announced they would trigger the SMR. Defendants' arguments ignore the substance of Dr. Feinstein's evidence – including his articulation of basic principles of bond valuation and event study design – and disregard the governing legal authorities, which lend strong support to Dr. Feinstein's reasonable use of discretion to design an event study that is useful to the Court.

Dr. Feinstein's report articulates the objective generally accepted (and undisputed) principles of bond valuation applicable to senior investment-grade debt securities like the Notes,

- 4 -

and applies these principles to explain that the Notes were "substantially insulated from all but the most extreme news affecting the Company's financial performance" and that their pricing was primarily a function of factors such as interest rates, maturity dates, and other terms of the Notes. Feinstein Rpt. ¶¶156-159. Dr. Feinstein likewise articulates the basic principles of event study design (again undisputed), explaining that an economist constructing an event study must select events "where the news is new, unexpected, relatively unconfounded, and most importantly, highly economically material according to valuation principles." Feinstein Rpt. ¶153; Feinstein Reb. Rpt. ¶¶123, 241. In contrast, Dr. Feinstein explains that a "poor candidate event for testing market efficiency would be one where the news is a repeat of prior announcements, consistent with past expectations, confounded by countervailing components, of minor importance, or such that it would not be expected to elicit a statistically significant price reaction in an efficient market." Feinstein Reb. Rpt. ¶123.

Applying these principles, Dr. Feinstein explains that he reviewed news events from throughout the Class Period and concluded that, within the relatively short (92 market-day) Class Period, Defendants' June 24, 2020 announcement that Waste Management would trigger the SMR and redeem the Notes "was the only event that was of such import as to reasonably be expected to elicit a security price reaction over the threshold for statistical significance according to theoretical valuation principles." Feinstein Rpt. ¶160.

The Court should reject Defendants' meritless argument that Dr. Feinstein's event selection is too "subjective." *See* Def. Br. at 4-5. The crux of this argument is Defendants' unsupported contention that an economist must sterilize their analysis of any measure of subjective professional judgment in order to provide evidence that is probative of efficiency. Defendants overlook a wealth of case law holding that economic experts must use their discretion to select events that

will provide courts with meaningful evidence regarding market efficiency.  *See, e.g.*, *Petrobras*, 312 F.R.D. at 368 ("There is always some subjectivity in analyses of this nature, and courts would be unable to rely on expert testimony if they could not tolerate a modest level of subjectivity."); *McIntire*, 38 F. Supp. 3d at 429 ("[A]n expert who is conducting an event study necessarily must use his or her discretion to define selection criteria that are conducive to the execution of a meaningful multivariate regression analysis[.]"); *In re Teva Sec. Litig.*, 2021 WL 872156, at *33 (D. Conn. Mar. 9, 2021) ("No matter what date classification methodology an expert uses, there is likely to be some subjectivity involved.  Courts recognize that reality, and, in the normal course, do not discount or exclude *Cammer* 5 event studies based on that fact."); *Barclays*, 310 F.R.D. at 90 (an economist's "analysis is necessarily subjective [but] that does not mean his opinion is speculative or without any methodological constraints.  As a practical matter, researchers conducting event studies will often have to rely on subjective assessments.  While this methodology may detract from the *weight* one might place on the results, it does not affect admissibility.") (emphasis in original).[2]

In contrast, Defendants' own expert illustrates how an economist's failure to make reasonable judgments in service of supposed "objectivity" creates a useless and unreliable test of no probative value.  Defendants' expert admits that she constructed her test without any qualitative assessment of the underlying news events and without employing any professional judgment in

---

[2] Defendants cite numerous inapposite and distinguishable cases.  *See, e.g.*, *Brown v. China Integrated Energy Inc.*, 2014 WL 12576643 (C.D. Cal. Aug. 4, 2014) (a stock case where plaintiffs' expert, unlike here, failed to apply generally accepted finance principles and failed to control for industry effects); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91, 96 (1st Cir. 2014) (a stock case where plaintiffs' expert's event study contained numerous and extensive flaws, including the selection of highly volatile dates for testing that were unrelated to plaintiffs' allegations).  Notably, Defendants' own authority acknowledges that economics experts must employ a degree of subjective professional discretion in designing event studies.  *Brown*, 2014 WL 12576643, at *7; *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 2024 WL 1115944 (S.D.N.Y. Mar. 14, 2024).

selecting events to test. *See* Allen Tr. at 118:23-119:3.[3]  As a result, Ms. Allen tests the Notes'

responsiveness to events that, in light of the basic principles of bond valuation applicable to senior

investment-grade debt securities, would never be expected to elicit a measurable price response in

the first place.  For example, as Dr. Feinstein points out, Ms. Allen's analysis included testing

whether the Notes responded to news that a cruise liner had offloaded its garbage in a Waste

Management facility.  Feinstein Reb. Rpt. ¶242.  Needless to say, such news could never be

reasonably expected to impact the Notes, and a test purporting to measure whether the Notes

responded to this news provides no useful information to the Court.

Defendants also repeat their argument (unmoored from the *Daubert* standard) that

Dr. Feinstein's use of June 24, 2020 as an event date cannot be probative of efficiency for the

relatively short Class Period at issue here, ignoring that there is no "authority holding that an event

study must evaluate a minimum number of dates to be reliable (or even probative)," *Martínek v.

AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *16 (S.D.N.Y. Feb. 3, 2022) (certifying a one year

class period where event study tested three dates); *see also In re Am. Realty Cap. Props., Inc.

Litig.*, 2017 WL 3835881, at *1 (S.D.N.Y. Aug. 31, 2017) ("*ARCP*") (certifying a 15 month

bondholder class period based on *Cammer* and *Krogman* factors, including an event study testing

one corrective disclosure)[4]; *Plumbers & Pipefitters, Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d

1143, 1157 (N.D. Ohio 2013) (certifying bondholder class where event study tested two corrective

disclosures, and holding that the expert "acted appropriately in identifying and studying only the

corrective disclosures.  [B]ond prices do not react to the same types of information that drive stock

---

[3]  Excerpts of the deposition transcript of Lucy P. Allen, dated October 1, 2024, is attached as Ex. A to the Declaration of Noam Mandel in support of this opposition memorandum ("Mandel Declaration").  References to "Ex. __" are attached to the Mandel Declaration.

[4]  Defendants cite a fragment from the court's colloquy in *ARCP* in an attempt to suggest that the Court there rejected Dr. Feinstein's event study.  The court in *ARCP* accepted Dr. Feinstein event study and certified the bondholder class based on that event study alongside other efficiency factors.  2017 WL 3835881, at *1.

prices. Indeed, that proposition is firmly entrenched in cases evaluating the efficiency of bond markets.") (collecting cases).

In contrast, Defendants' argument relies principally on *Ohio Pub. Emp. Ret. Sys. Federal Home Loan Mortgage Corp.* ("*OPERS*"), a facially distinguishable case holding that "market efficiency across a *lengthy class period* cannot be assessed based upon a lone stock price reaction to news that concludes the class period." 2018 WL 3861840, at *2 (N.D. Ohio Aug. 14, 2018) (denying certification of 330-day class period). Moreover, "OPERS' discussion of *Cammer* factor five is out of step with Second Circuit precedent, so it is not persuasive as to the Court's assessment of this issue." *In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *4 (E.D.N.Y. Mar. 31, 2022).[5]

Defendants then pivot from accusing Dr. Feinstein of bending to Lead Plaintiffs and considering the June 24, 2020 corrective disclosure because it is alleged in the Complaint, to criticizing him for *not* bending to Lead Plaintiffs and discounting the March 18, 2020 disclosure that is also alleged in the Complaint. Defendants fail to contend with Dr. Feinstein's reasonable conclusion that because Defendants' March 18, 2020 statement expressly reaffirmed that "the Company now anticipates closing the Merger mid to late second quarter 2020" – *i.e.*, that the Company would not trigger the SMR because it would close the transaction before the End Date – it "was a poor candidate event on account of the countervailing mix of news that day." Feinstein

---

[5] Defendants cite several cases for the unremarkable proposition that an event study standing alone may not be conclusive evidence of market efficiency. *See, e.g.*, *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 316 (5th Cir. 2005) ("single decline on the last day of the class period is plainly *insufficient by itself* to show market efficiency throughout the class period") (emphasis added); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004) ("While the district court's brief allusion to the drop in the price of Keystone's shares during the days after the OCC announced that Keystone was insolvent reflects the assimilation of market information at its grossest level, that *single piece of information, standing alone*, does not represent adequate evidence that the plaintiffs in this case purchased their shares of Keystone stock in an efficient market. *But this is not to say that there is no other evidence for the court to consider.*") (emphasis added). Lead Plaintiffs do not ask the Court to certify the Class based *only* on Dr. Feinstein's event study, but rather based on a comprehensive showing of efficiency across all the relevant factors, including Dr. Feinstein's event study, as well as his additional independent empirical demonstration of the Notes' efficient response to movements in interest rates.

Reb. Rpt. ¶133; *see also* Feinstein Tr. (Ex. B) at 122:17-123:14; 154:11-25.  Indeed, contrary to Defendants' accusations of "bias," Dr. Feinstein's willingness to disagree with allegations in the Complaint underscores the proper independence and credibility of his analysis.[6]

"Dr. Feinstein has offered reasonable explanations for his decisions, and [Defendants' expert] has not identified a fundamental flaw in Dr. Feinstein's methodology that would require the wholesale preclusion of his study."  *Martínek*, 2022 WL 326320, at *18.  Accordingly, "Dr. Feinstein's report provides some . . . direct evidence that the market . . . reacted to unexpected, material information during the proposed class period."  *Id*.  The Court should consider this probative evidence as part of Lead Plaintiffs' robust multi-factor demonstration of market efficiency and certify the Class.

### 2.    VWAPs Are a Reliable Method of Measuring Daily Bond Prices

The Court should also reject Defendants' attempt at yet another bite at the apple for their empty VWAP arguments.  Defendants have now repeatedly argued without any authority that Dr. Feinstein's use of volume-weighted prices, rather than closing prices for bonds, is somehow incorrect.  Lead Plaintiffs and Dr. Feinstein responded by providing a detailed explanation for why volume-weighting is appropriate for measuring bond prices and citing recent authorities certifying bondholder classes based on VWAPs.  *See* Feinstein Reb. Rpt. ¶¶152-155, 158-159, *Petrobras*, 312 F.R.D. at 371-72; *ARCP*, 2017 WL 3835881, at *1.  Lead Plaintiffs and Dr. Feinstein also cited peer reviewed academic literature endorsing the use of VWAPs as a more appropriate

---

[6] The Court should also reject Defendants' attempt to accuse Dr. Feinstein of some improper access to the underlying regression analysis before preparing his opinion. Def. Br. at 8. The accusation is factually untrue and based on a misunderstanding of the timeline of events (which has already been clarified in Dr. Feinstein's deposition errata). Notably, Lead Counsel informed Defendants' counsel at the conclusion of Dr. Feinstein's deposition of the correct timeline, but Defendants' counsel nevertheless proceeded to make this argument. Lead Counsel and Dr. Feinstein will be pleased to further clarify the record or otherwise respond to any questions the Court may have concerning this issue.

measure of bond prices and criticizing the use of closing prices.  Feinstein Reb. Rpt. ¶¶153, 157.[7]

Moreover, Lead Plaintiffs pointed out that Defendants had falsely accused Dr. Feinstein of deviating from his normal methodology for measuring bond prices (VWAPs are the standard) and that Defendants and their expert had cited no authority to support their criticism of Dr. Feinstein's use of VWAPs or otherwise endorsing the use of closing prices for bonds.  Reply Br. at 5; Feinstein Reb. Rpt. ¶¶152-159.  Defendants have since submitted 20 pages of gratuitous briefing and yet another expert report, but still cite no authority in support of their VWAP argument or their naked assertion that VWAPs are somehow inconsistent with market efficiency for bonds.[8]

## III.    Dr. Feinstein Does Not Offer a Legal Opinion

Defendants argue that Dr. Feinstein is offering improper legal opinions.  *See* Def. Br. at 10.  They are wrong.  Dr. Feinstein does not offer legal opinions.  *See* Ex. B at 63:12-18; 64:19; *see also id.* at 298:9-12.  Rather, Dr. Feinstein offers economic opinions regarding the efficiency of the market for the Notes, *see, e.g.*, *id.* at 64:12-19, and his citations to case law applying generally accepted economic principles for establishing market efficiency do not transform these opinions into legal ones.  *See, e.g.*, *Shupe v. Rocket Co., Inc.*, 2024 WL 4349171, at *19 (E.D. Mich. Sept. 30, 2024) (expert's reference to case law did not render his opinion an improper legal opinion).

## IV.    Conclusion

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court deny Defendants' motion to exclude, and grant Lead Plaintiffs' motion to certify the Class.

---

[7] The literature includes the seminal work, "Measuring Abnormal Bond Performance" by Hendrik Bessembinder, *et al.*, (Ex. C) that supports the use of volume-weighted prices and criticizes the use of closing prices as a "naïve strategy" that "could introduce excessive noise[.]"  *See generally* Feinstein Reb. Rpt. ¶¶153, 155.

[8] Defendants unsupported critique of Dr. Feinstein's use of VWAPs, at most, "raises a question of weight and not admissibility."  *See, e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 4737173, at *3 (N.D. Ga. Mar. 14, 2018) ("[t]he choice of variables in conducting a statistical analysis is a question of fact rather than a question of method").

DATED:  November 5, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL
DESIREE CUMMINGS
JONATHAN ZWEIG
CHRISTOPHER T. GILROY


*/s/ Noam Mandel*
NOAM MANDEL

420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone:  (212) 432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com
cgilroy@rgrdlaw.com

*Lead Counsel for the Class*