# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

In Re WASTE MANAGEMENT SECURITIES    Civil Action No.
LITIGATION                           1:22-cv-04838-LGS

----------------------------------x

October 1, 2024
9:42 a.m.

Videotaped Deposition of LUCY P. ALLEN,

taken by Plaintiffs, pursuant to Notice, held

at the offices of Baker Botts LLC, 30 Rockefeller

Plaza, New York, New York, before Joseph R. Danyo,

a Shorthand Reporter and Notary Public within and

for the State of New York.

HUDSON COURT REPORTING & VIDEO    (212) 273-9911

Page 2

A P P E A R A N C E S :
    ROBBINS GELLER RUDMAN & DOWD LLP
    Attorneys for the Plaintiff Class
        420 Lexington Avenue, Suite 1832
        New York, New York 10170

    By:  NOAM MANDEL, ESQ.
        DESIREE CUMMINGS, ESQ.
        MIA BORNSTEIN, ESQ.
        CHRISTOPHER T. GILROY, ESQ.

    LAW OFFICE OF DAVID HARRISON PLLC
    Attorneys for Lead Plaintiff
        600 Mamaroneck Avenue
        4th Floor
        Harrison, New York
    By:  DAVID HARRISON, ESQ.

    BAKER BOTTS LLC
    Attorneys for Defendant and the Witness
        30 Rockefeller Plaza
        New York, New York 10112-4498

    By:  JAMES J. BEHA II, ESQ.


Also Present:
    DANIEL S. BENNENCOURT (Via Zoom)
    KEVIN MARTH, Videographer
        ~oOo~

Page 3

            Allen
        THE VIDEOGRAPHER:  Good morning.  We are
on the record at 9:42 a.m. Eastern Time on
October 1, 2024 for the stenographically
reported and videotaped deposition of Ms.
Lucy Allen taken in the action In Re Waste
Management Securities Litigation.
        My name is Kevin Marth, the legal video
specialist today.  Our court reporter is
Joseph Danyo.  We are both representing
Hudson Reporting & Video Nationwide.
        The deposition today is being held at
the New York City offices of Baker Botts
located at 30 Rockefeller Plaza in New York,
New York.
        Counsel's appearances will be noted on
the stenographic record.  At this time, the
court reporter will swear in the witness and
we may proceed.
L U C Y  P.  A L L E N, having been first duly
sworn by Joseph R. Danyo, a Notary Public, was
called as a witness and testified as follows:
EXAMINATION BY MR. MANDEL:
    Q.  Good morning, Ms. Allen.  How are you
today?

Page 4

            Allen
    A.  Fine, thanks.
    Q.  I am Noam Mandel.  We have met before.
We were talking before the deposition.  I am going
to be taking your deposition today.  Did you do
anything to prepare for your deposition today, Ms.
Allen?
    A.  Yes.
    Q.  What did you do to prepare?
    A.  I reviewed some materials.  I had some
discussions with my teammates, team.  And I had a
call with counsel.
    Q.  Which counsel did you speak with?
    A.  With Jim Beha.
    Q.  Did you discuss this deposition with any
other counsel to prepare?
    A.  No, I don't believe so.
    Q.  When you say you met with your team,
this is your team at NERA?
    A.  That's correct.
    Q.  Can you tell me the names of the members
of the team that you worked with in preparation for
this deposition.
    A.  So I can tell you who were members of my
team that helped me with a report and I believe

New York
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

New Jersey
732-906-2078

Allen

business financial news in Factiva that mentions the ADS acquisition or the deal.

Q. So did you take any steps to determine whether the news pile that would contain news that would be expected to move the notes in fact did contain any news that would be expected to move the notes?

A. Well, one of the things I did is to look at the days that, yes, so, for example, there are a couple of days in my report. So one is, for example, March 18 which is a date that Plaintiffs claim is a corrective disclosure, and Plaintiffs claim that the price of the notes dropped because of news about the acquisition, and that is one of the dates that I found in my news search when news about the acquisition did come out, and the acquisition was the company is saying that the acquisition, they're filing an 8-K about a delay. There's a Bloomberg story I mention on, I don't remember the date, June 18 or 16, I want to say. Let's see if we can find that.

Q. I think you're talking about the 18th, and I will ask you about that.

A. Okay. Thank you.

Allen

Q. Let's just pause for a moment. Would you look at page 24 of your report.

A. Sure.

Q. Footnotes 83 and 85 are where you lay out the criteria for the searches.

A. Yes.

Q. You were just saying that one of the things you did to determine whether the pile actually contained news that could be expected to move the market was look at the March 18, 2020 disclosure. Is that correct?

A. It might be correct that I said that. I'm not sure it's correct. You're asking did I do anything to determine that. My criteria was my criteria, so I didn't then within my criteria change my criteria and say let me pick only certain dates. I used the criteria as stated in my report. So I didn't do something, I had this objective method, objective, replicable method, and I applied that method. I didn't adjust that method taking a look at the results.

Q. So you didn't look at the articles to make an independent assessment of whether the news would be expected to move the price of the SMR

Allen

notes. Is that correct?

A. That's right.

Q. Is it your view that making such an independent assessment as an economist would by definition render the analysis unreliable?

A. I think -- I'm not sure what you're saying, but, if you don't have an objective and replicable method, it doesn't, it then will not be objective and replicable.

I have a method that is objective, and it is replicable. So, if you want to add to that method or do something else and say you're going to put in some subjective criteria and make your own determination that someone else cannot, that you cannot write down the specifics of how that works and just say I've used, you know, valuation principles, which is like not saying anything. It's just saying I'm using, I mean that's the same thing as saying I've just decided what will affect the price.

So what you describe is not something replicable and objective, and I don't think that's a good method.

Q. So if an expert were to read the

Allen

articles and employ independent expert judgment concerning whether the articles were or were not reasonably expected to move the stock price, is that necessarily subjective?

A. It sounds subjective the way you've described it. Perhaps there would be objective criteria and it could be replicable, but, as you've described it, it sounds very subjective to me.

Q. So, for example, reading some of the articles we were looking at before about, you know, an upgrade in Waste Management or Mass Mutual buying shares in Waste Management, an expert couldn't review those articles and remove those from the test dates and still be objective?

A. You would have to have an objective method for doing that. I heard Dr. Feinstein testify that he is refusing to say that the equity analysts are equity analysts, and he's saying that they are analysts that cover the company, and they are therefore covering the SMR notes.

So, by his logic, a story by UBS, which by his logic would be covering the SMR notes and would be an analyst, their deciding to buy would itself, according to what he's saying, then be

**New York**
212-273-9911

Hudson Court Reporting & Video
1-800-310-1769

**New Jersey**
732-906-2078