**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re WASTE MANAGEMENT SECURITIES
LITIGATION

Case No. 1:22-cv-04838-LGS

(Oral Argument Request)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. STEVEN
FEINSTEIN**

BAKER BOTTS L.L.P.

David D. Sterling (admitted *pro hac vice*)
Amy Pharr Hefley
910 Louisiana Street
Houston, Texas 77002

James J. Beha II
30 Rockefeller Plaza
New York, New York 10112

**Attorneys for Defendants**

**There is no "presumption" of admissibility.** The Funds must "demonstrate[] to the court that it is more likely than not that" Dr. Feinstein's opinions are "based on sufficient facts or data," are "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.[1] They fail to do so.

**"Indirect" factors do not demonstrate market efficiency here.** Rather than defend the merits of Dr. Feinstein's work, the Funds chiefly argue that his event study is "superfluous," pointing to decisions finding efficiency without event study evidence. Opp. 2-3 (citing cases). But the Funds have offered Dr. Feinstein's event study in support of their class certification motion, so the Court must "subject [his] expert testimony to *Daubert*'s rigorous standards" *before* considering it in "the Rule 23 class certification analysis." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 429 (S.D.N.Y. 2019). Unless the Funds now wish to withdraw Dr. Feinstein's event study opinions, their argument that it is "superfluous" is irrelevant.

But even if the Court were to consider the "indirect" evidence before assessing his event study, the indirect factors do not support a finding of efficiency here. The authority on which the Funds rely were all "case[s] of … high volume stock[s] followed by a large number of analysts and traded on a national exchange," *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 91-92 (S.D.N.Y. 2015)), where "the remaining [*Cammer* and *Krogman*] factors … *all point[ed] toward market efficiency*," *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *12-13 (S.D.N.Y. July 10, 2019).[2] The Funds cannot show here that "the indirect factors 'so

---

[1] If there were any question, recent amendments to Rule 702 "'clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule,'" and "'emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.'" *B&R Supermarket, Inc. v. Visa Inc.*, 2024 WL 4252031, at *2 n.9 (E.D.N.Y. Sept. 20, 2024) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment).

[2] *Barclays*, 310 F.R.D. at 91 (NYSE-listed stock; weekly trading volume over 18%; coverage by at least 80

strongly support a presumption of market efficiency'" that it "'obviates the need to examine the empirical evidence.'" Opp. 2-3 (quoting *Allergan*, 2021 WL 4077942, at *10). To the contrary, the indirect factors suggest *inefficiency*:

- *Cammer* 1 (trading volume): The Notes traded infrequently for much of the alleged class period and did not trade at all on many days. Allen Rpt. ¶¶ 35-41.

- *Cammer* 2 (analyst coverage): *No* analysts covered the Notes.[3] *Id.* ¶¶ 52-54.

- *Cammer* 3 (market makers): There is *no* evidence of market makers for the Notes, which traded over the counter, not on an exchange.[4] *Id.* ¶¶ 35-41.

- *Krogman* 2 (bid-ask spread): There is *no* evidence of bid-ask spreads because bid-ask spreads for debt securities are not reported. Dkt. # 104 at 17.

This evidence does not establish market efficiency. *See Bombardier*, 546 F.3d 196, 210 ("absence of market makers," "lack of analysts[,]" "absence of [empirical] proof" and "infrequency of trades … all tend to establish … inefficiency").

Moreover, while defendants "do not [] have to show an *in*efficient market," *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *9 (S.D.N.Y. Jul. 3, 2013), compelling empirical evidence of inefficiency exists here, including days when Notes experienced significant price movements in *opposite* directions, when their respective prices crossed (Notes with *lower* coupon rates and *shorter* terms traded at *higher* prices), and when they experienced unexplained significant price movement. *See* Allen Rpt. ¶¶ 37-39; Dkt. # 104 at 13.

---

equity analysts; 51 active market makers); *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *10 (S.D.N.Y. Sept. 8, 2021) (NYSE-listed stock; designated market makers; weekly trading volume over 3.9%; coverage by 29 equity analysts); *Signet Jewelers*, 2019 WL 3001084, at *13 (NYSE-listed stock; designated market makers; weekly trading volume over 9%; coverage by 48 equity analysts).

[3] Dr. Feinstein points to analyst coverage of WM's *common stock* and to *credit ratings* for the Notes. Feinstein Rpt. ¶¶ 88, 92, 107-109. But "no analysts … specifically followed the [Notes]." *Bombardier*, 546 F.3d at 206; *see* Opp. 15-16. And there are "compelling reasons … for rejecting … an analogy" between credit ratings and analyst coverage. *Bombardier*, 546 F.3d at 206; *see* Dkt. # 104 at 15-16.

[4] Dr. Feinstein *assumes* underwriters acted as market makers, Feinstein Rpt. ¶¶ 112-116, but he fails to "demonstrate that any firm 'regularly publish[ed] bids and quotes'" or "'furnish[ed] bids and quotes on request,'" *Bombardier*, 546 F.3d at 206-07 (rejecting expert opinion that "underwriters … acted as market makers" without "evidence … that firms engaged in … [market making] activities").

2

**Price movement with interest rates is not evidence of informational efficiency.** The Funds cite no academic support for Dr. Feinstein's claim that his additional test of "changes in market interest rates and the prices of the [Notes]" evidences market efficiency, nor could they. For the fraud-on-the-market presumption, market efficiency depends on price movement in response to "material information *regarding the company and its business*." *Basic v. Levinson*, 485 U.S. 224, 241 (1988). But Dr. Feinstein's test shows only, and unsurprisingly, that Note prices correlate with interest rates, not that they reflect any information particular to WM. *See* Allen Rpt. ¶ 44 ("Dr. Feinstein's claim is akin to claiming that a stock is efficient merely because its price moves with the S&P 500 Index."). His interest rate test says nothing of "the sensitivity of the price to false statements." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 370 (S.D.N.Y. 2016).

**No court has found price movement on a single day sufficient to establish efficiency.** The Funds argue no minimum number of event dates is required. Opp. 11. But they cite no decision finding a single event date sufficient. In *OPERS*, the court rejected Dr. Feinstein's single-day study. *Ohio Pub. Emply. Ret. Sys. v. Fed Home Loan Mortg. Corp.*, 2018 WL 3861840, at *2 (N.D. Ohio Aug. 14, 2018). And in *ARCP*, the court found Dr. Feinstein's event study for the common stock (which tested 46 event dates) to be evidence of market efficiency but rejected his single-date event studies for the preferred stock and bonds as failing to demonstrate market efficiency.[5] *In re Am. Realty Cap. Props., Inc. Litig.*, 2017 WL 3835881, at *1 (S.D.N.Y. Aug. 31, 2017); Ex. 1, *ARCP* Dkt. 516 at 143:25-144:7.

**The evidence suggests Dr. Feinstein had his results *before* he selected the event date.**

---

[5] The court concluded Dr. Feinstein's single-date event studies did not show market efficiency for ARCP's preferred shares and notes because the "price movement following the 8-K of October 29, 2014" (the single date Dr. Feinstein considered) was "not proof sufficient to go backward in time," but it nonetheless preliminarily certified the entire class based on the finding of efficiency for the common stock, reasoning that "discovery is not going to be affected in the slightest because there are different securities involved … [and] there will be time later in the case to fine tune the class." Ex. 1, *ARCP* Dkt. 516 at 143:25-144:7.

Defendants need not prove Dr. Feinstein knew the results of the regression analysis in advance to establish that his event study is unscientific and unreliable. *See In re Vale S.A. Sec. Litig.*, 2022 WL 122593, *13, n.19, *16 (E.D.N.Y. Jan. 11, 2022) (while defendants "ha[d] not established" Dr. Feinstein "selected events already knowing whether there was a significant price impact," "due to its methodological deficiencies, [his] event study [was] entitled to no weight"). But the evidence that Dr. Feinstein's team knew its results in advance provides an additional basis to reject his opinions. *See* Mot. 8. Dr. Feinstein testified under oath repeatedly and unambiguously that his firm performed a damages analysis ***before*** he designed his event study and that he discussed event date selection with colleagues who performed the earlier analysis. Ex. 2, Feinstein Tr. at 97:17-98:10; 131:8-24. Plaintiffs' counsel had every opportunity to correct any supposed "misunderstanding of the timeline" on the record at Dr. Feinstein's deposition. The Court need not accept Dr. Feinstein's attempt to re-write or delete unfavorable testimony in his errata sheet.[6] *See Podell v. Citicorp Diners Club*, 112 F.3d 98, 104 (2d Cir. 1997) (rejecting "argu[ment] that the district court erred by relying on … original answers—as opposed to … amended ones"). Plaintiffs' counsel's unsworn assertions—whether made off-the-record at a deposition or in a footnote to a brief, *see* Opp. 9 n.6—cannot overcome Dr. Feinstein's sworn testimony.

The Court should exclude Dr. Feinstein's unreliable opinions and disregard them when deciding the Funds' Motion for Class Certification.

---

[6] Dr. Feinstein's errata sheet purports to make "factual clarifications" that actually rewrite or delete his extensive, detailed testimony about his firm's earlier damages work. *Compare* Ex. 2 at 73:15-18 ("Q. So when were you retained for this matter? A. I don't recall. As I said, the firm was retained to do work without me for a while. So we've been -- I just don't recall."), *with* Ex. 3, Feinstein Errata ("I don't recall. So we've been – I just don't recall"); *compare* Ex. 2 at 97:10-15 ("Q. The earlier engagement that you discussed in connection with this case, who from Crowninshield worked on that engagement? A. Dan Bettencourt. Q. Okay. A. He -- he headed it up. He put a team together."), *with* Ex. 3 ("There was no earlier engagement. Dan Bettencourt worked on that project after I submitted my report."); *compare* Ex. 2 at 97:16-19 ("***Q. So the team that supported you on this was involved in the earlier work? A. That's right.***") *with* Ex. 3 ("No. There was no earlier work, but there was some later work.").

Dated:  November 8, 2024

Respectfully submitted,

BAKER BOTTS L.L.P.

By*: /s/ David D. Sterling*
David D. Sterling
Amy Pharr Hefley
910 Louisiana Street
Houston, Texas 77002
Tel:  (713) 229-1946
Fax: (713) 229-7946
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com

James J. Beha II
30 Rockefeller Plaza
New York, New York 10112
Tel:  (212) 408-2510
Fax: (212) 259-2510
jim.beha@bakerbotts.com

**ATTORNEYS FOR DEFENDANTS**