# Exhibit 1

H8OAARC1ps-corrected      corrected

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x

IN RE:                                    15-mc-40 (AKH)

AMERICAN CAPITAL PROPERTIES, INC.
LITIGATION

--------------------------------x

                                          New York, N.Y.
                                          August 24, 2017
                                          10:40 a.m.


Before:

                    HON. ALVIN K. HELLERSTEIN

                                          District Judge


                         APPEARANCES

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiffs TIAA-CREF
     and the class
BY:  DEBRA J. WYMAN, ESQ.
     DANIEL S. DROSMAN, ESQ.

STULL STULL & BRODY
     Attorneys for Plaintiff IRA FBO John Esposito
BY:  MARK LEVINE, ESQ.

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiffs TIAA-CREF
     and the class
BY:  ROBERT M. ROTHMAN, ESQ.

WEISS & LURIE
     Attorneys for Plaintiff Simon Abadi
BY:  DAVID C. KATZ, ESQ.

MILBANK, TWEED, HADLEY & McCLOY LLP
     Attorneys for Defendants
BY:  SCOTT A. EDELMAN, ESQ.
     ANTONIA M. APPS, ESQ.
     DAVID MARCOU, ESQ.
     JED M. SCHWARTZ, ESQ.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

H8O5arc4                    JAMES and FEINSTEIN.

WITNESS FEINSTEIN:  '12.

THE COURT:  Pardon?

WITNESS FEINSTEIN:  August 1st, 2012.

THE COURT:  Sorry.

And, the last factor we have already talked about.

As to the factors under the Krogman case, the company capitalization, although much smaller, didn't have -- how much capitalization?

MS. WYMAN:  I think at the very beginning of the class period it was $75 million and within a few weeks it was up above $100 million for the common stock.

THE COURT:  The relative size of the bid-ask spread for the security?

WITNESS FEINSTEIN:  Narrow from the very beginning.

THE COURT:  And the company's float, and that changed a substantial amount.

From all of this I feel that it's appropriate, with regard to the common stock, to certify the class from the entire period.  As to the preferred and the debt, there is larger question.  Although there was significant price movement following the 8-K of October 29, 2014, that is not proof sufficient to go backward in time.  The Latin notion is *post hoc ergo propter hoc* which is a proposition of logic that doesn't follow.  That is to say, just because it happened now doesn't mean it happened before.  However, the discovery is not

H8O5arc4                    JAMES and FEINSTEIN.

going to be affected in the slightest because there are

different securities involved.  We have convertible senior

notes, different classifications, we have common stock and

preferred stock coming through a merger and there are senior

notes that are coming, there will not be variation in discovery

because of this, and there will be time later in the case to

fine tune the class.

So, this is my holding on the point of certification.

Do I need to make further finding, Ms. Wyman, on this point?

MS. WYMAN:  No, your Honor.

I just wanted to be clear that your holdings on market

efficiency applied to the 10b case and don't have anything to

do with the Section 11 claims that we have got.

THE COURT:  What difference would it make?  First of

all, in Section 11, market efficiency is not critical because

it is a strict liability case based on misrepresentations and

the burden is on the defendants to disprove liability and

disprove causation.

MS. WYMAN:  Right; and there is no reliance element.

I wanted to make sure I understood clearly.

THE COURT:  I don't draw any distinction between the

theories of action at this point.

MS. WYMAN:  Thank you, your Honor.

THE COURT:  Anything further I need to find?

MS. WYMAN:  Nothing that jumps to mind right now.