UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

In re WASTE MANAGEMENT SECURITIES   :   Civil Action No. 1:22-cv-04838-LGS
LITIGATION                                        :
                                                         :   <u>CLASS ACTION</u>
                                                         :
                                                         :   MEMORANDUM OF LAW IN SUPPORT
                                                         :   OF LEAD PLAINTIFFS' MOTION FOR
                                                         :   PRELIMINARY APPROVAL OF
                                                         :   SETTLEMENT AND APPROVAL OF
                                                         :   NOTICE TO THE CLASS
                                                         :
——————————————————————— x

4905-4586-0692.v1

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

      A.    Procedural History and Lead Plaintiffs' Investigation...........................................2

      B.    Discovery................................................................................................................4

      C.    Class Certification..................................................................................................5

      D.    Negotiation of the Settlement and the Terms of the Proposed Settlement.............6

III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................6

      A.    Standards for Preliminary Approval of a Proposed Class Action
           Settlement ...............................................................................................................6

      B.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class .........8

      C.    The Settlement Was Negotiated by Experienced Counsel Through an
           Arm's-Length Negotiation Process Overseen by an Experienced Mediator .........9

      D.    The Settlement Terms Are Adequate.....................................................................11

           1.    The Settlement Is Adequate Given the Costs, Risks, and Delay of
                  Trial and Appeal.......................................................................................11

           2.    *Grinnell* Factors 8 and 9: Range of Reasonableness in Light of
                  Best Possible Recovery and Attendant Risks of Litigation ......................13

           3.    The Method for Distributing Relief Is Effective......................................14

            4.    Attorneys' Fees and Expenses .................................................................15

            5.    Identification of Agreements under Rule 23(e)(3)...................................16

      E.    Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One
           Another..................................................................................................................17

      F.    *Grinnell* Factor 5: Maintaining Class Action Status Through Trial ....................17

      G.    *Grinnell* Factor 7: Defendants' Ability to Withstand a Greater Judgment ...........18

IV.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ..........................18

4905-4586-0692.v1

**Page**

V.      PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ............................20

VI.     PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND ................................21

VII.    CONCLUSION ..................................................................................................................23

4905-4586-0692.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Beach v. JP Morgan Chase Bank, N.A.*,
   2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020)............................................................................8

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............................................................ 8, 17, 18

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................................8, 10

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974),
   *abrogated by Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .............................................................................................*passim*

*Fulton Cnty. Emps.' Ret. Sys. v. Blankfein*,
   2022 WL 4292894 (S.D.N.Y. Sept. 16, 2022)....................................................................6, 10

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022).........................................................................15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x 37 (2d Cir. 2016) ..................................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018),
   *aff'd*, 822 F. App'x 40 (2d Cir. 2020) ..................................................................................10

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................*passim*

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................................12

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................17

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (2020) ............................................................................................11, 18

4905-4586-0692.v1

**Page**

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ..........................................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................................6, 7

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)..........................................................................15

*In re XL Fleet Corp. Sec. Litig.*,
2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024) ........................................................................15

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................................16

*McIntosh v. Katapult Holdings, Inc.*,
2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ............................................................. 8, 14, 18

*Merryman v. Citigroup, Inc.*,
No. 1:15-09185-cv, ECF 161
(S.D.N.Y. July 12, 2019)........................................................................................................16

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ...................................................................................................10

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022).........................................................................8

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)............................................................... 15, 19

*Pilgaonkar v. Kitov Pharms. Holdings Ltd.*,
No. 1:17-cv-00917, ECF 87
(S.D.N.Y. Mar. 29, 2019).......................................................................................................16

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................8

*Vaccaro v. New Source Energy Partners L.P.*,
2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .............................................................. 14, 18

*Volino v. Progressive Cas. Ins. Co.*,
2025 WL 733251 (S.D.N.Y. Mar. 7, 2025)............................................................................8

4905-4586-0692.v1

**Page**

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................18

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b) ...........................................................................................................3
    §78t(a).............................................................................................................3
    §78u-4..................................................................................... 2, 18, 19, 22
    §78u-4(a)(4) .................................................................................................16
    §78u-4(a)(7)(A)-(F).....................................................................................20
    §78u-4(e)(2) .................................................................................................13

Federal Rules of Civil Procedure
    Rule 23..............................................................................................................2
    Rule 23(c)(1)(C)............................................................................................17
    Rule 23(c)(2)......................................................................................... 18, 19
    Rule 23(c)(2)(B)................................................................................... 18, 19
    Rule 23(e) ........................................................................... 1, 6, 8, 23
    Rule 23(e)(1)(B)................................................................................. 6, 18, 19
    Rule 23(e)(2)...................................................................................... 6, 7, 11
    Rule 23(e)(2)(A)..............................................................................................8
    Rule 23(e)(2)(B)....................................................................................... 9, 10
    Rule 23(e)(2)(C)............................................................................................11
    Rule 23(e)(2)(C)(ii) .....................................................................................14
    Rule 23(e)(2)(C)(iii) ....................................................................................15
    Rule 23(e)(2)(C)(iv) .....................................................................................16
    Rule 23(e)(2)(D)............................................................................................17
    Rule 23(e)(3)....................................................................................... 7, 11, 16

17 C.F.R.
    §240.10b-5....................................................................................................14

**SECONDARY AUTHORITIES**

*2024 Review & Analysis: Securities Class Action Settlements*
    Laarni T. Bulan and Eric Tam
    (Cornerstone Research 2025)....................................................................14

4905-4586-0692.v1

Lead Plaintiffs Seafarers Officers & Employees Pension Plan, Seafarers Money Purchase Pension Plan, and United Industrial Workers Pension Plan ("Lead Plaintiffs"), on behalf of themselves and the Class, respectively submit this Memorandum of Law in support of their Motion for Preliminary Approval of Settlement and Approval of Notice to the Class (the "Motion").[1]

## I.      PRELIMINARY STATEMENT

After years of fierce litigation, Lead Plaintiffs seek preliminary approval of a $30 million cash Settlement to resolve this securities class action brought against Waste Management, Inc. ("Waste Management," "WM," or the "Company"), James C. Fish, Jr., John J. Morris, and Devina A. Rankin (collectively, the "Defendants" and together with Lead Plaintiffs, the "Parties" or "Settling Parties"). The proposed Settlement provides the Class with a significant monetary recovery while avoiding the risks and expenses associated with continued litigation, and satisfies Rule 23(e) and Second Circuit precedent. Thus, the Court should grant the Motion.

The Settlement is the result of arm's-length negotiations by experienced counsel overseen by a highly skilled mediator, Jed Melnick of JAMS. It was achieved after Lead Plaintiffs and Lead Counsel had engaged in extensive litigation and settlement negotiations, including: (i) defeating Defendants' motion to dismiss; (ii) successfully moving for class certification, including defeating a *Daubert* motion; (iii) reviewing Defendants' privilege logs and evaluating Defendants' assertions of privilege over more than 2,400 documents; (iv) piercing the attorney-client privilege and obtaining the production of hundreds of otherwise protected communications; (v) obtaining and reviewing over 18,160 documents (totaling over 107,650 pages) from Defendants; (vi) deposing four fact witnesses; (vii) consulting with an expert on damages; (viii) exchanging substantive

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated July 10, 2025 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Noam Mandel ("Mandel Decl.") in support of the Motion.

- 1 -

mediation statements; and (ix) participating in two in-person mediation sessions and two Zoom sessions.

For these and the reasons set forth below, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the Parties' negotiated [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Claim Form"), Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"), and Postcard Notice, attached as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Stipulation; (iii) find that the procedures for distribution of the Notice, Postcard Notice, Claim Form, and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure ("Rule"), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiffs pursuant to the PSLRA; and (v) appoint Verita Global as the Claims Administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History and Lead Plaintiffs' Investigation

Lead Plaintiff United Industrial Workers Pension Plan commenced this securities class action with the filing of a complaint on June 9, 2022. On November 30, 2022, the Court appointed Seafarers Officers & Employees Pension Plan, Seafarers Money Purchase Pension Plan, and United Industrial Workers Pension Plan as Lead Plaintiffs, and Robbins Geller Rudman & Dowd

- 2 -

4905-4586-0692.v1

LLP as Lead Counsel. On January 17, 2023, Lead Plaintiffs filed the operative amended complaint (the "Complaint"), asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of purchasers of the WM Notes during the period between February 13, 2020 and June 23, 2020, inclusive (the "Class Period"). The Complaint alleged that throughout the Class Period, Defendants made materially false and misleading statements and/or omissions concerning the timing of the completion of Waste Management's acquisition of Advanced Disposal Services, Inc. ("ADS"). Specifically, the Complaint alleged that throughout the Class Period, Defendants represented that the U.S. Department of Justice's ("DOJ") review for antitrust approval was progressing as expected and that Waste Management was on track to complete the acquisition of ADS by July 14, 2020, the date on which Waste Management was required to redeem the WM Notes if the transaction did not close. The Complaint further alleged that Defendants' representations were materially false and misleading because they failed to disclose that the DOJ, as early as February 2020, had serious concerns and was requiring divestitures in excess of the $200 million Antitrust Revenue Threshold set forth in the merger agreement between Waste Management and ADS, and that Waste Management, by late-April 2020, was renegotiating the terms of the ADS transaction. The Complaint further alleged that Defendants' misrepresentations and/or omissions caused the WM Notes to trade at artificially inflated prices during the Class Period.

On April 5, 2023, Defendants and former defendant Leslie K. Nagy ("Nagy") moved to dismiss the Complaint. Lead Plaintiffs filed an opposition to Defendants' motion to dismiss on May 3, 2023, and Defendants and Nagy filed a reply brief in further support of their motion to dismiss on May 16, 2023. On March 27, 2024, the Court denied Defendants' motion to dismiss, except with respect to Nagy. On May 10, 2024, Defendants answered the Complaint.

- 3 -

### B.      Discovery

Between May 2024 and May 2025, Lead Plaintiffs engaged in extensive fact discovery. On May 15, 2024, the Parties served each other with requests for production of documents. On June 14, 2024, the Parties served responses and objections to each other's requests for production of documents. In response to Defendants' requests, Lead Plaintiffs and their class certification expert produced 270 documents (totaling over 22,400 pages). Lead Plaintiffs also subpoenaed data from the Financial Industry Regulatory Authority, and reproduced that data to Defendants. In response to Lead Plaintiffs' requests for production of documents, Defendants produced over 18,160 documents, totaling more than 107,650 pages, including internal and external emails, Board materials, transaction-related communications, and presentations. Defendants also served third-party subpoenas on fourteen financial institutions, and re-produced to Lead Plaintiffs documents produced in response to those subpoenas.

In addition to document discovery, on November 15, 2024, Lead Plaintiffs served Defendants with Lead Plaintiffs' First Set of Interrogatories to All Defendants (the "First Set of Interrogatories") and Lead Plaintiffs' First Set of Request for Admission to All Defendants (the "RFAs"). On December 16, 2024, Defendants served Lead Plaintiffs with their responses and objections to the First Set of Interrogatories and the RFAs. Thereafter, Lead Plaintiff continued to pursue discovery, participating in numerous conferences with Defendants regarding the scope of Defendants' discovery obligations and Defendants' waiver of the attorney-client privilege with respect to certain communications, serving Defendants with Lead Plaintiffs' Second Set of Interrogatories[2], and deposing four Waste Management fact witnesses.

---

[2] Lead Plaintiffs served Defendants with Lead Plaintiffs' Second Set of Interrogatories on April 24, 2025. The Parties reached a settlement in principle before Defendants' responses were due.

4905-4586-0692.v1

When the Parties agreed to settle the Litigation, Lead Counsel was preparing for further depositions of Waste Management fact witnesses, the conclusion of fact discovery was roughly two weeks away, and the Parties were on the precipice of expert discovery.

### C.    Class Certification

On June 14, 2024, Lead Plaintiffs filed a motion for class certification and, in support thereof, an opening brief and expert report from Lead Plaintiffs' class certification expert, Dr. Steven Feinstein ("Dr. Feinstein"). On August 16, 2024, Defendants filed a brief in opposition to Lead Plaintiffs' motion for class certification and a rebuttal report from Defendants' class certification expert, Lucy P. Allen ("Ms. Allen"). On September 27, 2024, Defendants' Counsel deposed Dr. Feinstein. On October 1, 2024, Lead Counsel deposed Ms. Allen. On October 16, 2024, Lead Plaintiffs filed a reply brief, along with a rebuttal report from Dr. Feinstein, in further support of their motion for class certification. On October 29, 2024, Defendants moved to exclude the testimony of Lead Plaintiffs' class certification expert (the "*Daubert* Motion"). On October 30, 2024, Defendants filed a letter motion seeking permission to file a surreply on the issue of price impact in opposition to Lead Plaintiffs' motion for class certification, which the Court granted. On November 5, 2024, Lead Plaintiffs filed a brief in opposition to the *Daubert* Motion. On November 8, 2024, Defendants filed a reply brief in further support of the *Daubert* Motion. On March 31, 2025, the Court granted Lead Plaintiffs' motion for class certification and denied the *Daubert* Motion.

On April 15, 2025, Defendants filed a petition with the United States Court of Appeals for the Second Circuit seeking permission to appeal this Court's class certification decision pursuant to Rule 23(f) (the "Petition"). On April 24, 2025, Lead Plaintiffs filed an opposition to the Petition. The Petition was pending when the Parties reached the proposed Settlement.

**D.** **Negotiation of the Settlement and the Terms of the Proposed Settlement**

On July 31, 2024, the Parties participated in a full day, in-person mediation with Mr. Melnick. Before the mediation session, the Parties exchanged opening mediation statements, setting forth their respective positions on liability and damages. The Parties engaged in good-faith negotiations, but did not reach a settlement at the July 31 mediation session, and litigation continued. Notwithstanding, the Parties continued to engage in settlement negotiations facilitated by Mr. Melnick, including a second in-person mediation session on April 15, 2025, and two Zoom sessions held on April 10 and 18, 2025. Following these sessions, on May 8, 2025, the Parties accepted Mr. Melnick's mediator's proposal and agreed to settle the Litigation for $30 million in cash. Thereafter, the Parties worked diligently to document the key terms of their agreement, executing a term sheet on May 21, 2025. A few days later, on May 23, 2025, the Parties informed the Court of their settlement in principle.

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

**A.** **Standards for Preliminary Approval of a Proposed Class Action Settlement**

At the preliminary approval stage, the Court must determine whether it "will likely be able to" finally approve a class settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (emphasis in original) ("Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether '"giving notice is justified by the parties' showing that the court *will likely be able to:* (i) approve the proposal under Rule 23(e)(2) . . .'"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691 (S.D.N.Y. 2019) ("[P]reliminary approval [is] where 'prior to notice to the class a court makes a preliminary evaluation of fairness[.]'"); *Fulton Cnty. Emps.' Ret. Sys. v. Blankfein*, 2022 WL 4292894, at *2 (S.D.N.Y. Sept. 16, 2022) ("To grant

- 6 -

4905-4586-0692.v1

preliminary approval, a court need only find 'probable cause to submit the [proposed settlement] to class members.' Courts conducting this analysis 'must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate.'").[3]

In assessing the likelihood for final settlement approval, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The foregoing Rule 23(e)(2) factors "add to, rather than displace the *Grinnell* factors." *In re Payment Card*, 330 F.R.D. at 29. Indeed, courts in the Second Circuit continue to consider the following nine factors (some of which overlap with Rule 23(e)(2)) in deciding whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement[4]; (3) the stage of the proceedings and the amount of

---

[3] Emphasis is added and citations are omitted throughout unless otherwise noted.

[4] Since notice of the proposed Settlement has not been approved by the Court or disseminated to the Class, consideration of this factor is premature at the preliminary approval stage. *See, e.g.*, *GSE*, 414 F. Supp. 3d 699 n.1 ("The Court need not consider *Grinnell* factor #2, which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage.").

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk[] of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund . . . in light of the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Volino v. Progressive Cas. Ins. Co.*, 2025 WL 733251, at *2 (S.D.N.Y. Mar. 7, 2025); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7-*10 (S.D.N.Y. July 12, 2022); *Beach v. JP Morgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020); *GSE*, 414 F. Supp. 3d at 686.

As discussed below, the proposed Settlement should be preliminary approved because it satisfies Rule 23(e) and most of the *Grinnell* factors.[5]

> **B.      Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class**

Lead Plaintiffs and Lead Counsel have unquestionably adequately represented the Class in this Litigation, satisfying Rule 23(e)(2)(A).

The adequacy of Lead Plaintiffs' and Lead Counsel's representation of the Class is illustrated by, among other things, their record of investigating and pleading Class Members' claims, defeating Defendants' motion to dismiss, obtaining class certification over strenuous objections from Defendants (including the *Daubert* Motion, two rebuttal expert reports, a surreply in further opposition to class certification, and the Petition), conducting extensive fact discovery,

---

[5] *See, e.g.*, *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *8 (S.D.N.Y. Dec. 13, 2024) (alteration in original) ("Importantly, 'not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances.'"); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (same); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances.").

and obtaining this significant recovery. Indeed, Lead Plaintiffs and Lead Counsel vigorously investigated and litigated the claims at issue, propounding multiple discovery requests, participating in numerous conferences with Defendants to ensure that the Class received a complete documentary record, reviewing over 18,160 documents (totaling more than 107,650 pages), and deposing four Waste Management fact witnesses. Through these efforts, Lead Plaintiffs and Lead Counsel gained a thorough understanding of the facts and the relative strengths and weaknesses of the claims and defenses at issue, and were able to assess the fairness, reasonableness, and adequacy of the proposed Settlement.

Lead Plaintiffs also participated actively in this Litigation, reviewing pleadings, collecting and producing documents in response to discovery requests, and sitting for a deposition in connection with class certification. In addition, Lead Plaintiffs closely monitored the progress of the Litigation, maintained ongoing communication with Lead Counsel, and participated in key strategic decisions, including those pertaining to the resolution of this Litigation.

The Class' ability to obtain a $30 million cash settlement was a direct result of Lead Plaintiffs' and Lead Counsel's vigorous prosecution of this case. Accordingly, Lead Plaintiffs and Lead Counsel have adequately represented the Class.[6]

**C.     The Settlement Was Negotiated by Experienced Counsel Through an Arm's-Length Negotiation Process Overseen by an Experienced Mediator**

Rule 23(e)(2)(B) requires courts to consider whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[T]he arms-length quality of the

---

[6] For similar reasons, the Settlement, which was reached after extensive litigation, including motion practice and the near completion of fact discovery, satisfies the third *Grinnell* factor (*i.e.*, Lead Plaintiffs and Lead Counsel litigated this case through an advanced procedural posture and obtained this recovery).

4905-4586-0692.v1

negotiations remain a factor in favor of approving the settlement (one whose absence would count significantly against approval)." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

Here, the proposed Settlement was only reached after Lead Plaintiffs and Lead Counsel had defeated Defendants' motion to dismiss and had engaged in extensive fact discovery, including the review and evaluation of the significant documentary record and multiple fact witness depositions. The Settlement was the result of arm's-length negotiations by experienced and informed counsel, overseen by a highly skilled mediator. After exchanging detailed mediation statements, on July 31, 2024, the Settling Parties participated in a full-day mediation session with Mr. Melnick, a nationally recognized mediator with extensive experience in complex securities class actions. During the mediation session, the Settling Parties engaged in substantive discussions regarding the factual and legal record, including their respective positions on liability and damages. Although a resolution was not reached at the July 31 mediation session, the Settling Parties, with Mr. Melnick's assistance, continued to participate in good-faith negotiations. The Parties participated in a second in-person mediation session on April 15, 2025, and two Zoom sessions on April 10 and April 18, 2025. On May 8, 2025, the Parties accepted Mr. Melnick's mediator's proposal and agreed to resolve the litigation for $30 million in cash, subject to the negotiation of final settlement terms and Court approval.

Accordingly, Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the "'product of serious, informed, non-collusive negotiations,'" *Blankfein*, 2022 WL 4292894, at *2, and was "based on the suggestion [of Jed Melnick,] a neutral mediator." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) , *aff'd*, 822 F. App'x 40 (2d Cir. 2020). *See also D'Amato*, 236 F.3d at 85 ("[A] mediator's involvement in . . . settlement negotiations helps to ensure that the proceeding were free of collusion and undue pressure.").

- 10 -

**D.      The Settlement Terms Are Adequate**

The proposed Settlement is adequate when considering:

> (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). The Settlement also satisfies the overlapping *Grinnell* factors of the complexity, expense, and likely duration of the litigation; the risks of establishing liability; and the risks of establishing damages. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (2020) ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors . . . .'"); *GSE*, 414 F. Supp. 3d at 693-94 (analyzing the adequacy factor alongside the first, fourth, and fifth *Grinnell* factors).

### 1.      The Settlement Is Adequate Given the Costs, Risks, and Delay of Trial and Appeal

The proposed $30 million cash Settlement represents an excellent recovery for the Class whether evaluated independently, *see* infra III.D.2., or against the risks and expenses of continued and protracted litigation, including expert discovery, trial, and a likely appeal.

While Lead Plaintiffs and Lead Counsel believe in the merits of the claims asserted in this Litigation, they acknowledge that continued litigation was not without risks. If the case did not settle and litigation continued, Defendants would have continued to argue at summary judgment and trial that their statements regarding the DOJ review and the timing of the completion of Waste Management's acquisition of ADS were not false and/or misleading. Defendants would have also continued to argue that, contrary to establishing a strong inference of scienter, the documentary record demonstrated a lack of intent to defraud or conscious misbehavior or recklessness on their part. Defendants were also likely to contest Lead Plaintiffs' ability to establish loss causation,

- 11 -

which would have led to a costly and uncertain "battle of the experts." While Lead Plaintiffs and Lead Counsel believe there are strong responses to each of these arguments, Defendants only needed to defeat a single element in order to prevail and either limit or prevent any recovery by the Class.

Even if Lead Plaintiffs defeated Defendants' liability arguments at summary judgment, ligating the case through trial and post-trial appeals would have undoubtedly been a protracted and expensive endeavor. *See GSE*, 414 F. Supp. 3d at 693 ("[E]ven if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). Moreover, even if Lead Plaintiffs overcame the hurdle of establishing liability, they would have faced challenges to proving damages, including the availability, measure, and amount of damages. Defendants and their expert would have argued that Class Members were entitled to only minimal damages, including because the Class was not entitled to recover the full price drop when the truth was revealed, or no damages, including because the price of the WM Notes were not artificially inflated. Resolution of these issues would have required extensive expert testimony without any assurance of success. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) (alteration in the original) ("'[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.'"), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) (alteration in the original) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages. . . . There is the undeniable risk that

- 12 -

a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'").

Consequently, the proposed $30 million Settlement is adequate as it provides for an immediate and substantial cash recovery without the risks, costs, and delays associated with continued litigation.

### 2.  *Grinnell* Factors 8 and 9: Range of Reasonableness in Light of Best Possible Recovery and Attendant Risks of Litigation

"The adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011).

Here, the proposed Settlement provides the Class with a significant cash recovery of $30 million. This represents an outstanding result in light of the risks of continued litigation, *see* §II.D.1. Indeed, even if Lead Plaintiffs defeated summary judgment and established liability at trial, there would remain the issue of damages. Based on the facts and circumstances presented in this Litigation, Lead Plaintiffs' damages expert's estimates indicated that total recoverable damages ranged from approximately $56.2 million to $79.0 million. The $56.2 million damages figure assumes a recovery based on the full amount of the price decline caused by the June 24, 2020 corrective disclosure and applies the PSLRA's statutory limitation on damages for securities sold during the subsequent 90-day period. *See* 15 U.S.C. §78u-4(e)(2).[7] The higher $79.0 million figure is based on a more aggressive theory that calculates damages based on the WM Notes' 101% of par redemption price and similarly applies the PSLRA's limitation on damages.

---

[7] The WM Notes were redeemed on July 20, 2020, less than 90 days after the June 24, 2020 corrective disclosure date, meaning that all Class Members sold their WM Notes within the 90-day period following June 24, 2020.

The Settlement therefore represents approximately 53.4% of the $56.2 million damages figure and approximately 38% of the more aggressive $79.0 million damages figure. These percentages far exceed the recovery ranges for settlements that have been approved by courts in this Circuit. *See, e.g.*, *McIntosh*, 2024 WL 5118192, at *10 (finding settlement that represented 5.22% of the estimated maximum damages to be "well within the range found to be fair and reasonable"); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming order approving settlement that represented 6.1% of maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"). Moreover, the proposed Settlement is well above the $11.3 million median settlement amount and the 6.9% median settlement as a percentage of plaintiff-styled damages in Rule 10b-5 cases for the period 2015 through 2024. *See* Mandel Decl., Ex. 2, Laarni T. Bulan and Eric Tam, *2024 Review & Analysis: Securities Class Action Settlements* at 8 fig. 6 (Cornerstone Research 2025).

### 3.    The Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires courts to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The proposed method for administering the Settlement satisfies this requirement.

If approved by the Court, the Claims Administrator, Verita Global, will use standard methods to process Claims and distribute relief after final settlement approval. Specifically, Class Members will submit the Court-approved Claim Form, either by mail or online through the Settlement website's claims filing portal. Based on the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate in the Settlement

by, among other things, calculating their respective Claims based on the Court-approved Plan of Allocation. *See* Stipulation, ¶5.10. Lead Plaintiffs' claims are subject to the same standard of review. The Claims Administrator will notify claimants of any deficiencies in their Claims or conditions of ineligibility and claimants will be afforded the opportunity to cure any deficiencies or to contest the rejection of their Claims. *Id.*, ¶¶5.7-5.8. Any claims dispute that cannot be resolved will be presented to the Court for resolution. *Id.*, ¶5.8.

Upon the occurrence of the Effective Date and the completion of the claims' administration process, the Claims Administrator will distribute payments to Authorized Claimants. In the event there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Any additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.

### 4.    Attorneys' Fees and Expenses

Courts must consider "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Lead Counsel intends to request fees in an amount not to exceed 33-1/3% of the Settlement Amount, and expenses not to exceed $1,000,000, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. This fee request falls well within the range of fees awarded by courts in the Second Circuit in comparable complex common fund cases. *See, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (approving 33⅓% fee); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (approving 33⅓% fee); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (approving 33⅓% fee); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1

- 15 -

(S.D.N.Y. Feb. 18, 2022) (approving 33⅓% fee); *Pilgaonkar v. Kitov Pharms. Holdings Ltd.*, No. 1:17-cv-00917, ECF 87 (S.D.N.Y. Mar. 29, 2019) (approving 33⅓% fee); *Merryman v. Citigroup, Inc.*, No. 1:15-09185-cv, ECF 161 (S.D.N.Y. July 12, 2019) (approving fee 33⅓% fee); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (approving 33⅓% fee and finding requested fee "falls comfortably within the range of fees typically awarded in securities class actions"). The Stipulation allows for the payment of Court-approved attorneys' fees and expenses from the Settlement Fund once the Court executes the Judgment and enters an order awarding such fees and expenses.  Stipulation, ¶6.2. Moreover, the Stipulation provides that the proposed Settlement is not dependent on the allowance or disallowance of any application for attorneys' fees and expenses and that the procedure for allowing or disallowing any application for attorneys' fees is to be "considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement." *Id.*, at ¶6.4.

Further, pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs intend to request an amount not to exceed $60,000 in the aggregate for their time and expenses in connection with representing the Class.

### 5.    Identification of Agreements under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires the disclosure of "any agreement required to be identified under Rule 23(e)(3)," namely, "any agreement made in connection" with the settlement of a class action.  Fed. R. Civ. P. 23(e)(3). The Settling Parties have entered into a standard supplemental agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion (*i.e.*, opt-outs) reach a certain threshold.  *See* Stipulation, ¶7.3.

**E.     Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another**

The proposed Plan of Allocation was prepared by Lead Plaintiffs' damages expert and is consistent with Lead Plaintiffs' theory of liability. As reflected in the proposed Plan of Allocation, the Settlement treats Class Members equitably in relation to each other. Pursuant to the Plan of Allocation, each Authorized Claimant, who purchased or otherwise acquired the WM Notes in a domestic transaction and held the Notes during the Class Period, shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its recognized losses. *See* Stipulation, Ex. A-1 at 15-19.

Where, as here, the proposed Plan of Allocation calls for the *pro rata* distribution of settlement proceeds it is "presumptively reasonable." *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

**F.     *Grinnell* Factor 5: Maintaining Class Action Status Through Trial**

"An order that grants or denies class certification may be altered or amended before final judgment." *See* Fed. R. Civ. P. 23(c)(1)(C). As a result, courts routinely find that this factor weighs in favor of final approval where there is a risk that defendants would oppose class certification. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at \*13 (finding this factor weighed in favor of approval where there remained a risk that defendants would oppose class certification if the case went to trial); *GSE*, 414 F. Supp. 3d at 694 (alterations in original) ("Although the 'risk of maintaining a class through trial is present in [every] class action,' 'this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated.").

4905-4586-0692.v1

Although Lead Plaintiffs and Lead Counsel successfully moved for class certification, decertification remained a risk. When the Parties agreed to settle this Litigation, Defendants' Rule 23(f) petition challenging class certification was pending before the U.S. Court of Appeals for the Second Circuit.

### G.    *Grinnell* **Factor 7: Defendants' Ability to Withstand a Greater Judgment**

Although Defendants were able to withstand a greater judgment, this fact "does not necessarily preclude a finding that the settlement is fair." *McIntosh*, 2024 WL 5118192, at *11; *Namenda*, 462 F. Supp. 3d at 311. This is particularly true where, as here, the other factors overwhelmingly weigh in favor of approval. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *14 ("Plaintiffs concede it is likely that Alibaba could have withstood [a greater judgment], but correctly note that 'where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'"); *Vaccaro*, 2017 WL 6398636, at *6 ("Although [d]efendants may have had the ability to withstand a greater judgment, this factor does not render the settlement unfair, given the force of the other *Grinnell* factors.").

## IV.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Courts "must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice must be "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). A notice plan that "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'" satisfies due process. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

Here, the notice plan satisfies Rule 23(c)(2) and the PSLRA. If approved, the Claims Administrator will notify the Class of the Settlement by mailing or emailing a copy of the Postcard

- 18 -

Notice to all Class Members who can be identified with reasonable effort. The Claims Administrator will also cause a copy of the Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. The Claims Administrator will also set up and maintain a Settlement website where the Notice and Claim Form will be available to Class Members, and all relevant settlement-related documents, including briefs and declarations, will be posted. Further, the Claims Administrator will establish a toll-free number that Class Members can call to make inquiries. The proposed method of providing notice to Class Members satisfies Rule 23(e)(1)(B) and constitutes the "'best notice practicable under the circumstances.'" *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *8-*9 (Rule 23(c)(2)(B) satisfied where notice plan provided for mail and/or email notice and publication notice); *GSE*, 414 F. at 702 (Rule 23(e)(1)(B) and Rule 23(c)(2)(B) satisfied where notice provided for individual mail notice and publication notice).

Consistent with Rule 23(c)(2) and the PSLRA, the Notice describes, among other things: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Class and objecting to any aspect of the Settlement; (v) the procedure for submitting a Claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Class; and (vii) the date, time, and place of the Settlement Hearing. The Notice also states: (i) the amount of the Settlement determined in the aggregate and on an average per WM Note basis; (ii) that the Parties do not agree on the average amount of damages per WM Note that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per WM Note basis); (iv)

- 19 -

4905-4586-0692.v1

the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F).

Lead Plaintiffs also request the appointment of Verita Global as the Claims Administrator to provide all Court-approved notices to the Class, to process Claim Forms, and to administer the Settlement. Verita Global is a nationally recognized notice and claims administration firm with a wealth of experience administering complex securities class action settlements. While the actual fees payable to the Claims Administrator from the Settlement Fund will depend on the number of notices mailed and claims submitted and processed, it is estimated that if 20,000 notices are mailed and 5,000 claims are received, Notice and Administration Expenses will total approximately $250,000.[8]

## V. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiffs respectfully propose the below schedule concerning the Settlement. The proposed schedule flows from the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing – which Lead Plaintiffs request be approximately 100 days from entry of the Preliminary Approval Order in order to comply with the Class Action Fairness Act and to allow recipients sufficient time to act.

| Event | Proposed Timing |
|---|---|
| Deadline for emailing or mailing the Postcard Notice to potential Class Members and posting of the Notice and Claim Form on the Settlement Website (the "Notice Date") | No later than 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Within 7 calendar days of the Notice Date |
| Deadline for submitting Proofs of Claim | Within 90 calendar days of the Notice Date |

---

[8]   In addition, Verita Global estimates $39,500 for broker and nominee reimbursement costs.

| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | No later than 35 calendar days before the Settlement Hearing |
|---|---|
| Deadline for receipt of requests for exclusion or objections | No later than 21 calendar days before the Settlement Hearing |
| Deadline for filing reply papers | No later than 7 calendar days before the Settlement Hearing |
| Deadline for Lead Counsel to serve Defendants' Counsel and file with the Court proof of mailing, emailing, and publishing | No later than 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order.  Any scheduling updates will be posted on the Settlement website. |

## VI.    PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND

Pursuant to III.C.5 of the Court's Individual Rules and Procedures for Civil Cases, Lead Plaintiffs and Lead Counsel respectfully provide the following anticipated deductions from the Settlement Fund:

4905-4586-0692.v1

| | Amount | Settlement Fund % | Average Per Damaged Note[9] |
|---|---|---|---|
| Settlement Fund Value | $30,000,000.00 | 100% | $24 |
| Estimated Claims Administrator Fees, Costs, and Expenses[10] | $250,000.00 | 0.83% | $0.2 |
| Maximum Proposed Attorneys' Fees | $10,000,000.00 | 33.33% | $8 |
| • Robbins Geller Rudman & Dowd LLP | $8,000,000.00 | 26.667% | $6.4 |
| • Law Office of David Harrison PLLC[11] | $2,000,000.00 | 6.667% | $1.6 |
| Maximum Litigation Expenses | $1,060,000.00 | 3.53% | $0.85 |
| • Attorneys' Costs and Expenses | $1,000,000.00 | 3.33% | $0.8 |
| • Lead Plaintiffs' PSLRA Reimbursement | $60,000.00 | 0.20% | $0.05 |
| Broker Reimbursement[12] | $39,500.00 | 0.13% | $0.32 |
| Estimated Taxes[13] | $50,000.00 | 0.167% | $0.04 |
| Anticipated Recovery[14] | $18,600,500.00 | 62% | $14.88 |
| Anticipated Recovery To Class Members As A Percentage of Damages | | 23.5-33.1% | |

---

[9] Lead Plaintiffs' damages expert's estimates indicate that the alleged misconduct at issue in this Litigation affected a total of approximately 1.25 million Notes during the Class Period.

[10] The fees, costs, and expenses provided herein are based on the dissemination of approximately 20,000 Postcard Notices and receipt of approximately 5,000 claims. Actual Claims Administrator fees, costs, and expenses may be higher or lower, and will depend on the actual number of notices mailed and claims processed. According to the Claims Administrator, this estimate is conservative and is based, among other things, on the Claims Administrator's experience administering securities class action settlements of a similar size, and the complexity of administering a settlement that involves notes.

[11] The Law Office of David Harrison PLLC intends to share a portion of any fees they may receive pursuant to an award by the Court in this matter with Lowey Dannenberg, P.C. ("Lowey Dannenberg"), based on work performed prior to David Harrison's departure from Lowey Dannenberg.

[12] Brokers and nominees may request reimbursement for their expenses in connection with distributing notices to potential Class Members. According to the Claims Administrator, this estimate is conservative and is based, among other things, on the size and nature of the Class. Actual broker reimbursement expenses may be higher or lower, and will depend on the number of notices distributed by brokers and nominees.

[13] This is a conservative estimate of anticipated taxes on interest income earned by the funds in the Escrow Account for a single year.

[14] The estimated net distribution amount does not include any interest that will be earned on the funds while in the Escrow Account.

4905-4586-0692.v1

- 23 -

## VII.    CONCLUSION

The Settlement constitutes an excellent recovery for the Class, and satisfies the requirements of Rule 23(e) and Second Circuit precedent. Therefore, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Class; (iii) appoint Verita Global as Claims Administrator; and (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED:  July 10, 2025                 Respectfully submitted,

                                      ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                      CHAD JOHNSON
                                      NOAM MANDEL
                                      DESIREE CUMMINGS
                                      JONATHAN ZWEIG


                                      _/s/ Noam Mandel_
                                      NOAM MANDEL

                                      420 Lexington Avenue, Suite 1832
                                      New York, NY 10170
                                      Telephone:  (212) 432-5100
                                      chadj@rgrdlaw.com
                                      noam@rgrdlaw.com
                                      dcummings@rgrdlaw.com
                                      jzweig@rgrdlaw.com

- 23 -

4905-4586-0692.v1

- 24 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*
forthcoming)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone:  (619) 231-1058
(619) 231-7423 (fax)
elleng@rgrdlaw.com

*Lead Counsel for the Class*

4905-4586-0692.v1

**WORD COUNT CERTIFICATION**

Pursuant to Rule III.3.B.1 of the Honorable Lorna G. Schofield's Individual Rules of Practice in Civil Cases, the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 6,863 words. This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

DATED:  July 10, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
NOAM MANDEL

*/s/ Noam Mandel*
NOAM MANDEL

420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone:  (212) 432-5100
noam@rgrdlaw.com

*Lead Counsel for the Class*