UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re WASTE MANAGEMENT SECURITIES :    Civil Action No. 1:22-cv-04838-LGS
LITIGATION

:    <u>CLASS ACTION</u>

:
:
:    MEMORANDUM OF LAW IN SUPPORT
:    OF LEAD PLAINTIFFS' MOTION FOR
:    FINAL APPROVAL OF CLASS ACTION
:    SETTLEMENT AND APPROVAL OF PLAN
x    OF ALLOCATION

---------------------------------------------------------------x

4927-3846-5143.v1

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................................3

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL...............................................3

    A.    The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell* ..............3

    B.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23 and *Grinnell* Factors ...........................................................................................6

        1.    The Class Was Adequately Represented ......................................................6

        2.    The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator.....................................8

        3.    The Relief Provided by the Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal............................9

            a.    The Complexity, Expense, and Likely Duration of Litigation.................................................................................10

            b.    The Risks of Establishing Liability and Damages at Trial ............11

        4.    Stage of the Proceedings and the Amount of Discovery Completed.........13

        5.    The Recovery Is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation..............................................14

        6.    The Reaction of the Class Supports Final Approval.................................15

        7.    Maintaining Class-Action Status Through Trial.......................................16

        8.    Defendants' Ability to Withstand a Greater Judgment.............................17

        9.    Other Rule 23(e)(2) Factors Support Final Approval ...............................17

            a.    The Proposed Method of Distributing Relief Is Effective.............18

            b.    The Proposed Award of Attorneys' Fees Is Fair and Reasonable ..............................................................................18

            c.    Identification of Agreements in Connection with the Settlement ....................................................................................19

4927-3846-5143.v1

**Page**

       d.      The Settlement Treats All Class Members Equitably Relative to One Another ..................................................................19

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ..................................................................20

V.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS..................................................................21

VI.    CONCLUSION..................................................................23

4927-3846-5143.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................................................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)......................................................16, 17

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................................................9

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................... *passim*

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................................11

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................................................20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................................4, 20

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................................................9, 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ..........................................................................6

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) .........................................................................................20

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016)...................................................................................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd*, 822 F. App'x 40 (2d Cir. 2020)........................................................................... *passim*

4927-3846-5143.v1

**Page**

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........................................................................10

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................14

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................11

*In re GSE Bonds Antitrust Litig.*,
  2020 WL 3250593 (S.D.N.Y. June 16, 2020) ....................................................................6, 16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)...........................................................................9, 11, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................15, 20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................13

*In re Jernigan Capital, Inc. Sec. Litig.*,
  No. 1:20-cv-09575-JLR-KHP, ECF 154
  (S.D.N.Y. May 29, 2025)........................................................................................................18

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................21

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020).....................................................................................5, 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) ...........................................................................................6, 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................................. *passim*

*In re Sony SXRS Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................................................................17

- iv -

**Page**

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)......................................................15, 21

*In re XL Fleet Corp. Sec. Litig.*,
   2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024)..........................................................18

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................15, 19

*McIntosh v. Katapult Holdings, Inc.*,
   2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ...........................................5, 17, 18, 20

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................................................12

*Pearlstein v. Blackberry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................................................4, 18, 22

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)........................................................9, 22

*Synder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................................................6

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................5

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) .............................................................................21

*Volino v. Progressive Cas. Ins. Co.*,
   2025 WL 733251 (S.D.N.Y. Mar. 7, 2025) ...........................................................9, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005),
   *superseded by rule as stated in Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ...................................................................4, 5, 8, 21

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..............................................................4

4927-3846-5143.v1

**Page**

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 WL 5492998 (S.D.N.Y. Oct. 2 2013) ...........................................................................16

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b)...................................................................................................................11, 14, 20
   §78u-4(a)(4) ...........................................................................................................1, 18, 19, 22
   §78u-4(a)(7) .........................................................................................................................21, 22

Federal Rules of Civil Procedure
   Rule 23 ..............................................................................................................6, 9, 21, 22
   Rule 23(c)(1)(C)........................................................................................................................16
   Rule 23(c)(2)(B)................................................................................................................8, 21, 22
   Rule 23(e)......................................................................................................................1, 3, 21
   Rule 23(e)(1)(B)........................................................................................................................21
   Rule 23(e)(2) ...................................................................................................... *passim*
   Rule 23(e)(2)(A) ..........................................................................................................................6
   Rule 23(e)(2)(C)(i)........................................................................................................................9
   Rule 23(e)(2)(C)(ii)....................................................................................................................17
   Rule 23(e)(2)(C)(iii)....................................................................................................................17
   Rule 23(e)(2)(C)(iv)....................................................................................................................17
   Rule 23(e)(2)(D) ........................................................................................................................17
   Rule 23(e)(2)(C).....................................................................................................................5, 9
   Rule 23(e)(2)(D) ....................................................................................................................5, 9
   Rule 23(e)(3)................................................................................................................................4

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
   (NERA Jan. 22, 2025)..................................................................................................15

Edward Flores and Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation*: *HI 2025 Update*,
   (NERA July 29, 2025) ................................................................................................14

4927-3846-5143.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, lead plaintiffs Seafarers Officers & Employees Pension Plan, Seafarers Money Purchase Pension Plan, and United Industrial Workers Pension Plan ("Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Settlement and approval of the Plan of Allocation.[1]

## I.    PRELIMINARY STATEMENT

After extensive litigation and substantial arm's-length negotiations overseen by an experienced mediator, Lead Plaintiffs and Lead Counsel obtained a $30 million cash recovery (the "Settlement") for the Class. The Settlement represents an excellent result for the Class and should be approved as fair, reasonable, and adequate.

For nearly three years, Lead Plaintiffs and Lead Plaintiffs' Counsel diligently prosecuted this Litigation on behalf of the Class: drafting and filing an initial and amended complaint; successfully, in large part, defeating Defendants' motion to dismiss; successfully moving for class certification (including defeating Defendants' motion to exclude Lead Plaintiffs' expert); obtaining and analyzing over 18,000 documents (totaling over 107,000 pages) produced by Defendants and third parties; deposing several fact witnesses and defending and conducting class certification expert depositions; and participating in arm's-length negotiations overseen by Jed Melnick, a highly experienced mediator with JAMS. Through these efforts, Lead Plaintiffs and Lead Counsel developed a deep and thorough understanding of the facts and the relative strengths and weaknesses of Lead Plaintiffs' claims.

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, dated July 10, 2025 (ECF 146-1) (the "Stipulation") and in the accompanying Declaration of Noam Mandel in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Mandel Declaration" or "Mandel Decl."). Unless otherwise noted, internal citations are omitted and emphasis is added.

4927-3846-5143.v1

While Lead Plaintiffs and Lead Counsel believe in the merits of the claims asserted in this Litigation, they recognized that continued litigation posed significant risks, as Defendants vehemently deny liability and damages.  Defendants argued that their statements concerning the Department of Justice's antitrust review and the anticipated timing of the closing of the ADS transaction were inactionable forward looking or opinion statements, and that the facts failed to establish a strong inference of any Defendant's scienter.  Defendants argued that Waste Management never guaranteed that it would close the merger by the end date, and that in any event, warned investors of the risks that the ADS transactions might not close on time, including because of the DOJ's review, and later because of the COVID-19 pandemic.  Mandel Decl., ¶¶38-43.  If Defendants prevailed on any of these arguments at summary judgment or trial, the Class stood to recover no (or significantly reduced) damages.[2]

With the foregoing in mind, and based on years of experience prosecuting securities fraud class actions, Lead Counsel supports the Settlement.  The Settlement recovers between 38% and 53.4% of estimated recoverable damages, an outstanding recovery under any measure.  Moreover, Lead Plaintiffs support the Settlement, and, although the deadline to object to the Settlement has not yet passed, there have been no objections thus far.[3]  Nor have any Class Members sought exclusion from the Class.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication,

---

[2]    In addition, at the time of Settlement, Defendants' Rule 23(f) petition was pending in the Second Circuit Court of Appeals, creating the risk that the Court's class certification order would be reversed.

[3]    The deadline to object to the Settlement and Plan of Allocation is November 25, 2025.  If any objections are timely filed, Lead Counsel will respond in its reply brief, to be filed on December 9, 2025.  Defendants' Counsel received correspondence from Jovelle E. Brockway, a putative Class Member, requesting to comment.  A copy of this correspondence is attached hereto as Ex. B.

- 2 -

4927-3846-5143.v1

Establishment of Call Center Services and Website, and Requests for Exclusion Received to Date ("Murray Decl."), ¶15, submitted herewith.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation. The Plan of Allocation was developed in consultation with Lead Counsel's damages expert and was detailed in the Court-approved Notice of Pendency and Proposed Settlement of Class Action ("Notice"). The Plan of Allocation treats Class Members equitably and provides for the *pro rata* distribution of the Net Settlement Fund to Authorized Claimants based on their recognized losses. The Plan of Allocation calculates the Recognized Loss Amount based on the Net Settlement Fund divided by the total number of WM Notes represented by the valid Claims of Authorized Claimants. Mandel Decl., ¶63. To date, there have been no objections to the proposed Plan of Allocation.

For these and the reasons set forth below, the Court should grant final approval of the Settlement and approve the Plan of Allocation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Mandel Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Litigation; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell*

Rule 23(e) of the Federal Rules of Civil Procedure provides for final approval of a class action settlement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Second Circuit there is a "'strong judicial policy in favor of settlements, particularly in the class action

4927-3846-5143.v1

context.'"  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *see also Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("'The law favors compromise and settlement of class action suits.'"); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements.") (citation modified); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," courts consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

- 4 -

Fed. R. Civ. P. 23(e)(2).  Courts in the Second Circuit also consider the following factors, which overlap with the Rule 23(e)(2) factors, in determining whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund . . . in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors . . . .'"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("[T]here is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

The Rule 23(e)(2) and *Grinnell* factors are analyzed holistically.  *See Moses*, 79 F.4th at 243 ("Courts . . . must consider the four factors outlined in Rule 23(e)(2) holistically . . . ."); *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *8 (S.D.N.Y. Dec. 13, 2024) ("Importantly, 'not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances.'") (alteration in original); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances.").

The Court considered and found these factors warranted providing notice to the Class.  *See* ECF 154.  The Court's "conclusions [at preliminary approval] stand and counsel equally in favor of

4927-3846-5143.v1

final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval . . . has already explained in detail why the Rule 23 and *Grinnell* factors support approval . . . .  The Court re-adopts that analysis here, and limits its focus to those few developments since . . . preliminary approval . . . ."); *see also Synder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting at final approval that "[s]ignificant portions of the Court's [preliminary approval] analysis remain materially unchanged").

### B.     The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23 and *Grinnell* Factors

#### 1.     The Class Was Adequately Represented

In approving a settlement, courts are required to consider whether the "class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  The adequacy assessment typically "'entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest[s] of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.'"  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020); *see also In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) ("[T]he primary factors [in assessing adequacy] are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'").

These requirements are readily satisfied here.  Lead Plaintiffs' claims "are typical of and coextensive with those of other Class Members and [they have] no interests antagonistic to those of other Class Members."  *Signet*, 2020 WL 4196468, at *2.  Like all other Class Members, Lead Plaintiffs are alleged to have suffered losses on their WM Notes as a result of materially false and

- 6 -

misleading statements and/or material omissions concerning the timing of Waste Management's acquisition of ADS. Therefore, Lead Plaintiffs were "sufficiently motivated" to obtain the largest possible recovery for the Class. *See Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member").

As detailed in Lead Plaintiffs' declaration, Lead Plaintiffs actively participated in the prosecution of this Litigation, including by reviewing pleadings, providing document discovery, preparing for and sitting for deposition, reviewing and analyzing documents produced in discovery, and participating in numerous discussions with Lead Counsel regarding the evidentiary record, case developments, litigation strategy, and settlement negotiations. *See* Declaration of Leslie Tarantola ("Tarantola Decl."), ¶¶2-8, submitted herewith.

Lead Counsel has extensive experience litigating complex securities class actions. *See* accompanying Declaration of Noam Mandel Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. F (Firm Resume). In certifying the Class, the Court found that Robbins Geller "has substantial experience in prosecuting securities fraud class actions, having served as lead or co-lead counsel in many securities class actions." ECF 139 at 29.

Lead Counsel also adequately represented the Class in this Litigation, vigorously prosecuting this case for nearly three years. *See generally* Mandel Decl. Lead Counsel conducted a thorough investigation and filed a detailed amended complaint. Lead Counsel also substantially defeated Defendants' motion to dismiss and successfully moved for class certification. Lead Counsel also aggressively pursued discovery, including propounding document requests, interrogatories, and request for admission on Defendants, reviewing and analyzing over 107,000 pages of documents, conducting fact depositions, and participating in numerous meet and confers to clarify the scope of

4927-3846-5143.v1

discovery.  Lead Counsel also participated in settlement negotiations and drafted the settlement-related documents.  *See generally* Mandel Decl.  Through these efforts, Lead Counsel was able to obtain an excellent recovery for the Class.

Accordingly, the adequacy factor is satisfied and weighs in favor of final approval of the Settlement.

### 2.    The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator

Rule 23(e)(2)(B), which analyzes whether the settlement was the product of arm's length negotiations, favors approval.  *See Moses*, 79 F.4th 235 at 243 ("[T]he arms-length quality of the negotiations remain a factor in favor of approving the settlement (one whose absence would count significantly against approval).").

Here, the proposed Settlement was the result of arm's-length negotiations, and was only reached after almost three years of hard fought litigation, and with the benefit of a fulsome documentary record.  On July 31, 2024, the Parties participated in a full-day, in-person mediation overseen by Jed Melnick, an experienced mediator.  In advance of the mediation, the Parties submitted and exchanged mediation statements.  During the mediation session, the Parties engaged in substantive discussions regarding the documentary evidence and their respective positions on liability and damages.  A settlement was not reached during that session, and litigation continued. The Parties held a second in-person mediation on April 15, 2025, and videoconference sessions on April 10 and 18, 2025.  The Parties thereafter continued their negotiations through Mr. Melnick and on May 8, 2025, accepted Mr. Melnick's recommendation to settle the Litigation for $30 million in cash.

Accordingly, the Settlement warrants approval because it was the result of arm's-length negotiations over the course of nearly a year by experienced counsel overseen by a mediator, whose

4927-3846-5143.v1

involvement "helps to ensure that the proceedings were free of collusion and undue pressure." *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Volino v. Progressive Cas. Ins. Co.*, 2025 WL 733251, at \*2 (S.D.N.Y. Mar. 7, 2025) (Schofield, J.) ("settlement was 'procedurally fair because it was reached through vigorous, arm's-length negotiations that were overseen by a neutral mediator and only after experienced counsel had thoroughly evaluated the merits of Plaintiffs' claims through factual and legal investigation and extensive litigation'"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding settlement procedurally fair where the parties engaged in arm's length negotiations before an experienced mediator).

### 3.   The Relief Provided by the Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Courts must consider the adequacy of a settlement in light of "the costs, risks, and delay of trial and appeal" and other factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This Rule 23 factor overlaps with the first, fourth, and fifth *Grinnell* factors (*i.e.*, the complexity, expense and likely duration of the litigation; the risks of establishing liability; and the risks of establishing damages). *See Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at \*29 (E.D.N.Y. Feb. 16, 2023) ("'The first factor set forth under Rule 23(e)(2)(C), the "costs, risks, and delay of trial and appeal," "subsumes several Grinnell factors," including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages . . . .'"); *Namenda*, 462 F. Supp. 3d at 311 ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's Grinnell factors . . . .'"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94 (S.D.N.Y.

2019) (analyzing the adequacy factor alongside the first, fourth, and fifth *Grinnell* factors). As detailed below, each of these factors weigh in favor of final approval.

### a. The Complexity, Expense, and Likely Duration of Litigation

"Courts recognize that 'securities class actions are generally complex and expensive to prosecute,'" and litigating such actions "is notably difficult and notoriously uncertain." *Signet*, 2020 WL 4196468, at *4 (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same). This Litigation is no different.

This case involved complex and disputed issues concerning, among other things, falsity, scienter, loss causation, and damages. This case arose from alleged misrepresentations that were arguably forward looking statements and/or statements of opinion concerning WM's expectations concerning the future timing of the closing of the Company's acquisition of ADS, which presented significant challenges to establishing liability here. Although the Court largely rejected Defendants' arguments at the motion to dismiss stage and in certifying the Class, success at summary judgment or trial was by no means guaranteed. Lead Plaintiffs would have emphasized Defendants' access to information contrary to the alleged misstatements, but Defendants would have presented strong counterarguments that they had no definitive knowledge of the future closing date, that they subjectively believed the opinions they expressed, and that there was little evidence of any personal motive or other intent to defraud. Defendants would have also pointed to the COVID-19 pandemic as an unprecedented event that arguably impacted the timing of the ADS transaction and the related regulatory review, and argued that they could not be held responsible for failing to foresee that outcome. Defendants would also have attempted to exploit the market disruptions associated with the COVID-19 pandemic to refute causation and damages. In addition, this case involved additional

- 10 -

evidentiary challenges because it revolved around a regulatory process that was conducted principally through outside counsel, and much of the discovery was therefore covered by potential privileges, presenting significant additional risks to Lead Plaintiffs' ability to prove the claims at issue.

The Settlement eliminates the risks of unfavorable outcomes with respect to these and other issues.

### b. The Risks of Establishing Liability and Damages at Trial

In assessing the fairness, reasonableness, and adequacy of a settlement, "[a] court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694; *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[T]he Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.").

To prevail on a §10(b) claim, Lead Plaintiffs must establish all elements of the claim, including falsity, materiality, scienter, and loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Defendants need to succeed on only one defense to defeat the entire case.

The Amended Complaint alleged that Defendants made materially false and misleading statements and/or omissions concerning the timing of Waste Management's acquisition of ADS. Mandel Decl., ¶14. More specifically, Lead Plaintiffs allege that throughout the Class Period, Defendants represented that the DOJ's review for antitrust approval was progressing as expected and Waste Management was on track to complete its acquisition of ADS by July 14, 2020, the end date that would trigger Waste Management's obligation to redeem the WM Notes at 101% of par if the transaction was not complete by that time. *Id.* Lead Plaintiffs also allege that Defendants failed to disclose that the DOJ was requiring divestitures in excess of the $200 million Antitrust Revenue

- 11 -

Threshold set forth in the merger agreement as early as February 2020, and that Waste Management was renegotiating the terms of the transaction by late April 2020. *Id.* Lead Plaintiffs allege that the WM Notes traded at artificially inflated prices as a result of the misrepresentations and/or omissions, and that those prices declined when Waste Management announced on June 24, 2020, a revised merger agreement that would not close by the July 14, 2020 end date, and the impending redemption of the WM Notes at 101% of par as a result. *Id.*

Defendants vehemently disputed liability. They argued that their statements concerning the DOJ's antitrust review and the anticipated timing of the closing of the ADS transaction were inactionable forward looking or opinion statements. Mandel Decl., ¶9. They also argue Lead Plaintiffs could not establish their scienter. *Id.*

They also contended that they never guaranteed that the ADS transaction would close by the merger end date and in fact warned investors that this could be the case – due to the DOJ's review and later the COVID-19 pandemic. *Id.* While Lead Plaintiffs and Lead Counsel believe they had meritorious responses, they recognized that Defendants' success on any one of these arguments posed risks to the Class' ability to recover if the Litigation continued.

Even if Lead Plaintiffs established liability, there was risk and uncertainty regarding proving causation and damages, including because the Litigation involved complex non-exchange-traded debt securities in the context of the COVID-19 pandemic and associated market disruption. Mandel Decl., ¶38. To prove loss causation and damages, Lead Plaintiffs would have relied heavily on expert testimony. This would have invariably led to *Daubert* challenges and a "battle of the experts" with unpredictable results. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as

'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("'[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.'") (alteration in the original), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . . .'").

In sum, the Settlement provides the Class with a substantial and immediate cash benefit while avoiding the risks and costs of continued litigation, which would have included additional fact depositions, discovery disputes concerning privilege issues, expert discovery, summary judgment, trial, and a possible appeal.[4]  Thus, this factor weighs in favor of final approval.

### 4.    Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings factor examines "'whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *In re Signet*, 2020 WL 4196468, at *7 (ellipsis in original).  Here, Lead Plaintiffs and Lead Counsel had more than enough information to assess the strengths and weaknesses of Lead Plaintiffs' claims, and the propriety of the Settlement.  By the time the Settlement was reached, the Litigation was well

---

[4]    Defendants' Rule 23(f) petition was pending in the Second Circuit Court of Appeals at the time the agreement in principle was reached.

4927-3846-5143.v1

underway:  Lead Counsel had largely defeated Defendants' motion to dismiss; successfully moved for class certification; engaged in extensive party discovery; reviewed and analyzed over 107,000 pages of documents; conducted several fact depositions; consulted with an expert on damages; and participated in almost a year of settlement negotiations with mediator Jed Melnick.  Therefore, Lead Plaintiffs and Lead Counsel "had a sufficient record to intelligently assess the strengths and weakness[es] of their claims and the value of the case," *id.*, which supports final approval of the Settlement.

### 5.    The Recovery Is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of a recovery "may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011). Moreover, when there are "serious challenges to establishing liability," the best recovery must be adjudged against "the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270.

Here, the $30 million Settlement represents an outstanding recovery under any measure.  The Settlement represents between 38% and 53.4% of the reasonably recoverable damages of between $56.2 million and $79 million.  Mandel Decl., ¶50.  Moreover, the Settlement far exceeds the median recovery for securities class actions approved during the first half of 2025 ($13 million).  *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: *H1 2025 Update*, at 16, fig. 14 (NERA July 29, 2025).[5]  The Settlement also far exceeds the median settlement recovery of 1.2% of "NERA-Defined Investor Losses" in §10(b) actions in 2024.  *See*

---

[5]    Attached    hereto    as    Exhibit    A    and    also    available    at https://www.nera.com/content/dam/nera/publications/2025/PUB_US-H1_2025_Trends-Report.pdf.

4927-3846-5143.v1

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 27, fig. 24 (NERA Jan. 22, 2025).[6]  Finally, the $30 million Settlement is within the range of reasonableness because it was "agreed upon" by Lead Counsel after "careful consideration" of the substantial risks of no recovery.  *See Facebook*, 343 F. Supp. 3d at 414 (finding agreed upon $35 million settlement within the range of reasonable where there was a risk of obtaining zero or minimal damages).

### 6.    The Reaction of the Class Supports Final Approval

"'[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry' into the fairness and adequacy of the Settlement." *In re Signet*, 2020 WL 4196468, at *6 (alterations in original); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *6 (S.D.N.Y. Dec. 19, 2014) ("The reaction of the . . . Class to the Settlement is a significant factor in assessing its fairness and adequacy.  The absence of objections and opt outs "provides evidence of Class Members' approval of the terms of the Settlement and desire to share in the proceeds thereof."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) ("It is 'well-settled' that the reaction of the class to a settlement is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

While the deadline for submitting objections has not yet passed, there have been no objections to, or requests for exclusion from, the Settlement.  *See* Murray Decl., ¶15.  The Class'

---

[6]  Attached as Exhibit D to the Fee Memorandum and also available at https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

4927-3846-5143.v1

reaction thus far weighs in favor of approval.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) ("[T]he absence of objections may itself be taken as evidencing the fairness of a settlement.") (citation modified), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also GSE*, 2020 WL 3250593, at *2 ("'A favorable reception by the Class constitutes "strong evidence" that a proposed settlement is fair.'"); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *6 (S.D.N.Y. Oct. 2 2013) ("This favorable response [*i.e.*, no objections and only eight opt outs] demonstrates that the class approves of the settlement and supports final approval."); *Facebook*, 343 F. Supp. 3d at 410 ("The overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor of [final approval].").

### 7.    Maintaining Class-Action Status Through Trial

A class certification order "may be altered or amended before final judgment."  *See* Fed. R. Civ. P. 23(c)(1)(C).  Consequently, courts routinely find that this factor weighs in favor of final approval when there is a risk that defendants would oppose class certification.  *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *13 (finding this factor weighed in favor of approval where there remained a risk that defendants would oppose class certification if the case went to trial and "a class certification order may be altered or amended [at] any time before a decision on the merits"); *GSE*, 414 F. Supp. 3d at 694 ("Although the 'risk of maintaining a class through trial is present in [every] class action,' 'this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated.") (alterations in original).

Although the Court certified the Class, Defendants' Rule 23(f) petition was pending before the Second Circuit Court of Appeals, creating a risk that the Class of WM Notes purchasers would

be decertified, effectively ending the Litigation.  Therefore, this factor supports approval of the Settlement.

### 8.    Defendants' Ability to Withstand a Greater Judgment

A defendant's ability to withstand a potentially larger settlement "does not necessarily preclude a finding that the settlement is fair."  *McIntosh*, 2024 WL 5118192, at *11; *see also Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011) ("'[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"); *Aeropostale*, 2014 WL 1883494, at *9 ("Courts . . . generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.").  Moreover, a "defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *In re Sony SXRS Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).

Here, Defendants possessed the ability to pay a larger settlement, but in light of the other factors favoring approval, the Court may find this factor neutral.

### 9.    Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) requires courts to consider the following additional factors: (i) the effectiveness of the proposed method of distributing relief to the class; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  Each of these factors support final approval of the proposed Settlement.

- 17 -

4927-3846-5143.v1

### a.     The Proposed Method of Distributing Relief Is Effective

The methods for processing Class Members' Claims and distributing relief to Authorized Claimants is well-established and effective.  Here, the Court-appointed Claims Administrator, Verita Global, will review and process Claims under the guidance of Lead Counsel, allow claimants the opportunity to cure any deficiencies in their Claims or request the Court's review of a denial of their Claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the proposed Plan of Allocation.  *See* Stipulation, ECF 146-1, ¶¶5.3, 5.7-5.8, Notice, ECF 153-1, Appendix.  This proposed method of distributing settlement proceeds is "standard in securities and other class actions and is effective."  *Christine Asia*, 2019 WL 5257534, at *14.

### b.     The Proposed Award of Attorneys' Fees Is Fair and Reasonable

As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), Lead Counsel is applying for an award of 33-1/3% of the Settlement Fund as compensation for the services it rendered on behalf of the Class, as well as payment of litigation costs and expenses in the amount of $946,662.31.  The attorneys' fees requested by counsel are reasonable in light of the work performed and the results obtained, and a 33-1/3% fee award is consistent with fees awarded by courts in the Second Circuit, including in this District, in similar common-fund cases.  *See, e.g.*, *In re Jernigan Capital, Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 154, ¶4 (S.D.N.Y. May 29, 2025) (awarding attorneys' fees of 33-1/3% of the settlement fund) (attached as Ex. B to the Fee Memorandum); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33-1/3% of the settlement fund); *McIntosh*, 2024 WL 5118192, at *11-*13 (awarding attorneys' fees of 33-1/3% of the settlement fund); *Pearlstein*, 2022 WL 4554858, at *10 ("Class counsel's request for one-third of

the gross settlement fund is reasonable within this circuit."); *Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33-1/3% of the class settlement fund] is well within th[e range of fees awarded by courts in the Second Circuit] and falls comfortably within the range of fees typically awarded in securities class actions."). Notably, the Court's consideration of the requested attorneys' fees is separate from its consideration of approval of the Settlement, the Settlement may not be terminated based on the Court's ruling on attorneys' fees, and the Class was notified of the terms of the proposed award of attorneys' fees, including the timing of such payments. *See* Stipulation, ¶¶6.1, 6.4.

### c.    Identification of Agreements in Connection with the Settlement

As previously disclosed, and as provided to the Court, the Settling Parties have entered into a confidential supplemental agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion (*i.e.*, opt-outs) reach a certain threshold. *See* Stipulation, ¶7.3. This type of agreement is standard in securities class action settlements and has "no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at *15.

### d.    The Settlement Treats All Class Members Equitably Relative to One Another

The Settlement treats Class Members equitably. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, their, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation. Lead Plaintiffs are subject to the same distribution formula as every other Class Member.[7]

In sum, the Rule 23(e)(2) and *Grinnell* factors support final approval of the Settlement.

---

[7]    As detailed in the Fee Memorandum, Lead Plaintiffs are seeking awards pursuant to 15 U.S.C. §78u-4(a)(4) in connection with representation of the Class in this matter.

4927-3846-5143.v1

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approving a Plan of Allocation is the same as the standard for approving a settlement – namely, the plan must be "fair, reasonable, and adequate." *Signet*, 2020 WL 496468 at *13; *see also Guevoura Fund Ltd. v. Sillerman,* 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157-58 (S.D.N.Y. 2013) ("The plan of allocation is subject to the same test of fairness, reasonableness, and adequacy as the settlement itself."). A plan of allocation "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *McIntosh*, 2024 WL 5118192, at *11; *Christine Asia*, 2019 WL 5257534, at *15; *see also Advanced Battery*, 298 F.R.D. at 180 ("'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"); *In re Hi-Crush Partners L.P.*, 2014 WL 7323417, at *10 (same).

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Counsel's damages expert, is fair, reasonable, and adequate. *See* Mandel Decl., ¶61; *Facebook*, 343 F. Supp. 3d at 414 ("Plaintiffs' Plan of Allocation was prepared by experienced counsel along with a damages expert – both indicia of reasonableness."). The proposed Plan of Allocation provides that the Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on their recognized losses. Mandel Decl., ¶¶62-63; *see also McIntosh*, 2024 WL 5118192, at *11 (approving plan of allocation that distributed settlement funds to class members on a *pro rata* basis to class members as appropriate and consistent with prior cases). The proposed Plan of Allocation is consistent with the §10(b) claims alleged in the Litigation. Moreover, the Plan of Allocation was set forth in the Notice and, to date, no objections to the Plan of Allocation have been filed. This favorable response from the Class supports approval of the Plan of Allocation as fair and reasonable.

4927-3846-5143.v1

*See In re Signet*, 2020 WL 4196468, at \*6 ("The reaction of the Class also supports approval of the Plan of Allocation."); *In re Vecco*, 2007 WL 4115809, at \*14 ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation.").

## V.     THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e) requires that notice of a proposed class action settlement be given to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B), and that the notice be "the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort[s]." Fed. R. Civ. P. 23(c)(2)(B). In addition, a notice of settlement must satisfy due process and include the information outlined in Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7). A notice that fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'" satisfies Rule 23(e) and due process. *Wal-Mart*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members thereunder.") The notice plan used here satisfies these requirements. *See Volino*, 2025 WL 733251, at \*2 (finding notice program "effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23 and due process and constitutes the best notice practicable under the circumstances").

In accordance with the Preliminary Approval Order, the Claims Administrator, Verita Global, disseminated over 9,800 copies of the Court-approved Postcard Notice to potential Class Members and nominees. Murray Decl., ¶10. The Claims Administrator also published the Summary

- 21 -

Notice in *The Wall Street Journal* and transmitted it over *Business Wire*. *Id.*, ¶11.  In addition, the Claims Administrator provided potential Class Members with the Court-approved Notice online through the Settlement website. *Id.*, ¶13.

The Court-approved Notice provides Class Members with the necessary information to make an informed decision about the proposed Settlement.  The Notice provides recipients with information concerning: (i) the nature of the Litigation and the claims asserted therein; (ii) the definition of the Class; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation and estimated average per note recovery; (v) the maximum amount of attorneys' fees and expenses that will be sought; (vi) Class Members' rights to request exclusion from the Class or to object to the Settlement, the Plan of Allocation, and/or a request for attorneys' fees or expenses (including the method and timing for requesting exclusion or objecting to the Settlement); (vii) the binding effect of a judgment on Class Members; and (viii) the contact information for Lead Counsel and the Claims Administrator. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7).  The Notice also provides information concerning how to submit a Proof of Claim and the date, time, and location of the Settlement Hearing.

Here, the Court-approved notice plan, which combines individual email or First-Class Mail notice with publication of a Summary Notice in a widely-circulated publication and internet newswire, satisfies the requirements of Rule 23, due process, and the PSLRA, and constitutes the "best notice . . . practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Rodriguez*, 2023 WL 2184496, at *9-*10, *25 (finding First-Class Mail combined with print and internet-based publication of settlement was "the best notice practicable under the circumstances"); *Pearlstein*, 2022 WL 4554858, at *8-*9 (Rule 23(c)(2)(B) satisfied where notice plan provided for mail and/or email notice and publication notice); *In re Signet*, 2020 WL 4196468, at *14 ("Th[e]

- 22 -

combination of individual mail to all Class Members . . . supplement[ed] by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, was 'the best notice . . . practicable under the circumstances.'") (alteration in original).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and Plan of Allocation.

DATED:  November 10, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL
DESIREE CUMMINGS
JONATHAN ZWEIG
CHRISTOPHER T. GILROY

*s/ Noam Mandel*
NOAM MANDEL

420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com
cgilroy@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for the Class

- 23 -

**WORD COUNT CERTIFICATION**

Pursuant to III.B.1 of the Honorable Lorna G. Schofield's Individual Rules and Procedures for Civil Cases, the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 7,031 words.  This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

4927-3846-5143.v1