# EXHIBIT A

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: H1 2025 UPDATE

Edward Flores and Svetlana Starykh[1]

First Quarter Filings at a Five-Year High,
Second Quarter Filings at a Five-Year Low

Dismissals on Track to Increase for
Second Straight Year

29 July 2025

# SUMMARY

During the first half of 2025, 108 new federal securities class action suits were filed.[2] Of these, 65 cases were filed in the first quarter of 2025, a five-year high, and 43 cases were filed in the second quarter, a five-year low. Assuming filings continue at the same pace in the second half of 2025, annual filings for 2025 would total 216, a slight decline from the 229 seen in 2024 (see Figure 1). Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, totaled 99 filings, while suits involving merger objections and crypto unregistered securities accounted for four and five filings, respectively (see Figure 2).[3,4]

The electronic technology and technology services sector and the healthcare technology and services sector together comprised 59% of new filings in the first half of 2025, up from 56% in 2024, while the percentage of suits in the finance sector was 7%, down from 10% in 2024 (see Figure 3). The Second and Ninth Circuits together accounted for 51 of the 99 non-merger-objection, non-crypto unregistered securities filings in the first half of 2025, their lowest combined share of federal filings in the last five years. Meanwhile, there were 19 suits filed in the Third Circuit, exceeding the 18 filings in 2024 (see Figure 4). Among filings of standard cases, 44% included an allegation related to missed earnings guidance and 33% included an allegation related to misled future performance, a slight uptick from the 41% and 32% seen over full-year 2024, respectively (see Figure 5).[5]

The percentage of federal filings against foreign companies has continued to decline even as the percentage of foreign companies listed on US stock exchanges has increased.[6] In 2025, 12.1% of filings of standard cases were against foreign companies, compared to 26.9% of US listings represented by foreign companies (see Figure 6). Of the 12 standard filings against foreign companies so far this year, five have been against companies based in Europe and five have been against companies based in Canada (see Figure 7).

There were 13 suits with AI-related claims filed in the first six months of 2025, on track to exceed the 16 such suits filed in 2024. Similarly, there were eight crypto-related filings, matching the total seen across full-year 2024. On the other hand, COVID- and SPAC-related filings declined relative to 2024, with only two and four suits filed in each category, respectively (see Figure 8).

There were 121 cases resolved in the first half of 2025, of which 87 were dismissed and 34 were settled.[7] Standard cases accounted for 88% of resolutions, comprising 107 of 121 resolved cases. Assuming resolutions continue at this pace for the rest of the year, the number of resolved cases for 2025 would be 242, which would represent a 12% increase relative to the 217 resolved cases seen in 2024. The growth in resolutions is driven by a substantial rise in dismissed cases, which are on track to increase for a second straight year and exceed the 124 dismissals seen in 2024 (see Figure 9).

Since 2016, more filed cases have been dismissed than settled, with approximately 30% of filings remaining pending (see Figure 10). For cases dismissed between 2021–2024, the median time from filing of the first complaint to resolution increased from 1.4 years to 2.0 years but declined to 1.6 years in the first half of 2025. For cases settled in the first six months of 2025, the median time from filing of the first complaint to resolution was 3.3 years, a slight increase relative to the 3.2 years seen in 2024 (see Figure 11).

Aggregate settlements for the first six months of 2025 totaled $1.8 billion, representing 45% of the inflation-adjusted total of $3.9 billion across full-year 2024.[8] Excluding cases involving merger objections, crypto unregistered securities, or settlements without a monetary payment to the class, 44% of settlements had a settlement of less than $10 million, 31% had a recovery between $10 million and $49.9 million, and 25% settled for $50 million or more (see Figure 12).

The average settlement value was $56 million, a 27% increase relative to the 2024 inflation-adjusted average settlement value of $44 million (see Figure 13). The median settlement value was $12.5 million, a $1.8 million decline from the 2024 inflation-adjusted median settlement value of $14.3 million (see Figure 14).



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 1. **Federal Filings and Number of Companies Listed in the US**
January 1996–June 2025



**Filing Year**

Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data are from World Federation of Exchanges (WFE). The 2025 listings data are as of May 2025.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 2. **Federal Filings by Type**
January 2016–June 2025



Figure 3.  **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2021–June 2025



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 4.  **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2021–June 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 5. **Allegations in Federal Filings**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2021–June 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 6. **Foreign Companies: Share of Federal Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2016–June 2025



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

**Figure 7.  Federal Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2016–June 2025



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 8.  Event-Driven and Other Special Cases by Filing Year
January 2021–June 2025



Number of Federal Filings

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 9. **Number of Resolved Cases: Dismissed or Settled**
January 2016–June 2025



Figure 10. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2016–June 2025



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 11.  **Median Time from First Complaint Filing to Resolution**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2016–June 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 12.  **Distribution of Settlement Values**

Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2016–June 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 13. **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2016–June 2025



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 14. **Median Settlement Value**

Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

January 2016–June 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## | NOTES

1   This midyear edition of NERA's report "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Daniel Klotz, Debra Lederman, and other researchers in NERA's securities and finance capability for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to US federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in US federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services Securities Class Action Services (ISS SCAS), Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. All rights in the information provided by SCAS and its affiliates (SCAS) reside with SCAS and/or its licensors. SCAS makes no express or implied warranties of any kind and shall have no liability for any errors, omissions, or interruptions in or in connection with any data provided by SCAS. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which are considered a separate category.

4   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included, and thus the total number of allegations exceeds the total number of filings.

6   Here, a company is considered a foreign company based on the location of its principal executive office.

7   Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

8   For our settlement analyses, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. For example, the settlement analyses exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

## RELATED EXPERTS



**Edward Flores**
Director
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 563 6761
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit
**www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allow us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2025
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.