UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| In re WASTE MANAGEMENT SECURITIES LITIGATION | : : : : : : : : : : : x | Civil Action No. 1:22-cv-04838-LGS<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

4899-9290-4567.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ....................................................4

III.    ARGUMENT.......................................................................................................4

      A.   Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund.........................................................................4

      B.   The Court Should Apply the Percentage Method in Awarding Attorneys' Fees to Lead Counsel ...................................................................5

      C.   The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable................6

      D.   The Lodestar Cross-Check Confirms the Reasonableness of the Requested Attorneys' Fees .........................................................................11

      E.   The Remaining *Goldberger* Factors Support Lead Counsel's Fee Request ..........13

          1.   The Time and Labor Expended by Counsel .............................................13

          2.   The Magnitude and Complexity of the Litigation ...................................15

          3.   The Risk of the Litigation........................................................................15

              a.   Contingent Nature of Lead Counsel's Representation...................16

              b.   Risk of Establishing Liability ..........................................................17

              c.   Risk of Establishing Loss Causation and Damages.......................17

          4.   The Quality of Representation Supports the Requested Fee .....................18

          5.   The Requested Fee in Relation to the Settlement .....................................19

          6.   Public Policy Considerations ...................................................................19

          7.   The Class' Reaction to the Fee Request Supports the Requested Fee...............................................................................................20

          8.   The Fee Request Is Supported by Lead Plaintiffs.....................................20

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THE LITIGATION................................21

4899-9290-4567.v1

**Page**

V.    LEAD PLAINTIFFS ARE ENTITLED TO REASONABLE AWARDS UNDER
      15 U.S.C. §78u-4(a)(4) ...................................................................................................22

VI.   CONCLUSION.................................................................................................................23

4899-9290-4567.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ..............................................................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................8

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................4, 5

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ........................................................12

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)...........................................................15

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ........................................................7, 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ....................................................................4, 5, 11, 15

*Contant v. Bank of America Corp.*,
2023 WL 6842285 (S.D.N.Y. Oct. 17, 2023)...........................................................10

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011).....................................................................6, 12

*Ernst v. Dish Network, LLC*,
No. 1:12-cv-08794-LGS, ECF 237 (S.D.N.Y. Nov. 13, 2015) ..................................2

*Fosbre v. L.V. Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017),
*aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v.
Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018) ..............................................................................17

*Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)...........................................................................................4

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................. *passim*

4899-9290-4567.v1

**Page**

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................................. *passim*

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)..........................................................................10

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ..............................................................................................5

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).........................................................................5

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................................6, 16

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................................15, 18

*In re Bisys Sec. Litig.*,
2007 WL 2049726 (S.D.N.Y July 16, 2007) .........................................................................12

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022).........................................................................10

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................21

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. July 8, 2014)...............................................................7, 11, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) .......................................................................11

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016)........................................................................11, 13, 14

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................16, 20, 21

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018),
*aff'd sub nom. Kornell v. Haverhill Ret. Sys.*,
790 F. App'x 296 (2d Cir. 2019) .............................................................................................7

4899-9290-4567.v1

**Page**

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................22

*In re GSE Bonds*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) .........................................................16, 20, 22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................11, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003).................................................................................21

*In re Jernigan Cap., Inc.*,
No. 1:20-cv-09575-JLR-KHP, ECF 154
(S.D.N.Y. May 29, 2025)...................................................................................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .....................................................................23

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................................17, 19

*In re NYSE Specialists Sec. Litig.*,
No. 03-cv-8264, ECF 38 (S.D.N.Y. June 10, 2013).............................................................10

*In re Parking Heaters, Antitrust Litig.*,
2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)......................................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) .............................................................................5, 6

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)........................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) .....................................................................................16

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ........................................................................22

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020)......................................................................23

4899-9290-4567.v1

**Page**

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...............................................................19, 20, 23

*In re Telik, Inc. Sec. Litig.*,
　576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................................................2

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...........................................................6, 17, 19, 21

*In re XL Fleet Corp. Sec. Litig.*,
　2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024) ...............................................................10, 22

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*,
　2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ...........................................................................10

*Kohari v. MetLife Grp.*,
　2025 WL 100898 (S.D.N.Y. Jan. 15, 2025) ...............................................................10, 20, 22

*Le-Blanc-Sternberg v. Fletcher*
　143 F.3d 748 (2d Cir. 1998) ................................................................................................12

*Lea v. Tal Educ. Grp.*,
　2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .............................................................................16

*Leach v. NBC Universal Media, LLC*,
　2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ..........................................................................13

*Maley v. Del Glob. Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................6, 11, 12, 21

*McIntosh v. Katapult Holdings, Inc.*,
　2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) .........................................................10, 14, 20, 22

*Mo. v. Jenkins*,
　491 U.S. 274 (1989) ...........................................................................................................12

*Nichols v. Noom, Inc.*,
　2022 WL 2705354 (S.D.N.Y. July 12, 2022) ...............................................................................5, 10

*Pearlstein v. BlackBerry Ltd.*,
　2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ............................................................................10

*Savoie v. Merchs. Bank*,
　166 F.3d 456 (2d Cir. 1999) .................................................................................................6

4899-9290-4567.v1

**Page**

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..............................................................16, 18

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................6

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...........................................................18

*Toure v. Amerigroup Corp.*,
  2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)................................................................11, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005),
  *superseded by rule as stated in Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ...........................................................................5, 12

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).........................................................20

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013).........................................................23

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
  §78j(b).....................................................................................................15
  §78t(a) .....................................................................................................15
  §78u-4(a)(4) ...................................................................................... *passim*
  §78u-4(a)(6) .....................................................................................................6

## SECONDARY AUTHORITIES

Brian T. Fitzpatrick,
  *An Empirical Study of Class Action Settlements and Their Fee Award*
  7 J. Empirical Legal Stud. 811 (2010) .....................................................................7

Edward Flores and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
  (NERA Jan. 22, 2025).....................................................................................7, 9

Laarni Bulan and Eric Tam,
  *Securities Class Action Settlements: 2024 Review & Analysis*
  (Cornerstone Research 2025).....................................................................................9

4899-9290-4567.v1

**Page**

Theodore Eisenberg & Geoffrey Miller,
*Attorney Fees and Expenses in Class Action Settlements: 1993-2008*
7 J. Empirical Legal Stud. 248 (2010) ......................................................................7

Theodore Eisenberg, Geoffrey Miller & Roy Germano,
92 N.Y.U. L.R. 937 (2017) ....................................................................................13

4899-9290-4567.v1

Lead Counsel respectfully submits this memorandum of law in support of its motion for attorneys' fees and expenses and an award to each Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) for their work on behalf of the Class.[1]

## I.    INTRODUCTION

Through diligence and unwavering advocacy, Lead Counsel secured a $30 million cash recovery (the "Settlement") for the benefit of the Class.  As detailed in the Mandel Declaration and in the Settlement Memorandum, Lead Counsel devoted considerable resources and brought a high level of skill and experience to the prosecution of this Litigation, and secured an outstanding recovery representing between 38% and 53.4% of estimated recoverable damages.  Prior to obtaining this excellent result, Lead Counsel, among other things: (1) conducted an extensive investigation into the facts and potential claims and defenses leading to the filing of the Amended Complaint; (2) overwhelmingly defeated Defendants' motion to dismiss; (3) obtained class certification over Defendants' strenuous objections; (4) conducted extensive document discovery, including serving document requests, interrogatories, and request for admission on Defendants; (5) reviewed and analyzed over 107,000 pages of documents; (6) engaged in numerous meet and confers with Defendants regarding the scope of discovery and their privilege assertions; (7) conducted fact depositions; (8) engaged in settlement negotiations, including two full-day, in-person and two video conference mediation sessions with an experienced mediator, which included the exchange of

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, dated July 10, 2025 (ECF 146-1) (the "Stipulation"), the accompanying Declaration of Noam Mandel in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Mandel Declaration" or "Mandel Decl."), and in the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

mediation statements that set forth the parties' respective positions on liability and damages; (9) negotiated and obtained the instant Settlement; (10) drafted and negotiated the parties' term sheet; (11) drafted and negotiated the Stipulation and supporting documents; and (12) moved for and obtained preliminary approval of the Settlement. *See generally* Mandel Decl.

Having obtained a substantial recovery on behalf of the Class, Lead Counsel now respectfully moves this Court for an award of attorneys' fees equal to 33-1/3% of the Settlement Amount and payment of $946,662.31 in litigation expenses, together with interest on both amounts. The requested fee is fair and reasonable and consistent with awards in complex class action litigation according to empirical studies, and does not result in a windfall for Lead Plaintiffs' Counsel. *See* §III.C., D., *infra*. The reasonableness of Lead Counsel's fee request is also confirmed by the lodestar cross-check. The requested fee represents a multiplier of approximately 1.26 on Lead Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with contingency risks such as this one (and below the mean multiplier in securities class actions). *See Ernst v. Dish Network, LLC*, No. 1:12-cv-08794-LGS, ECF 237, ¶16 (S.D.N.Y. Nov. 13, 2015) (finding "2.57 multiplier" to be "within the range awarded by courts throughout the country") (attached hereto as Ex. A); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."). *See also, infra*, at §III.D. Moreover, the litigation expenses sought by Lead Counsel were reasonably incurred in connection with the prosecution of the Litigation.

The requested fee is also supported by the significant risks undertaken by Lead Plaintiffs' Counsel. Lead Plaintiffs' Counsel pursued this Litigation on behalf of the Class on a contingent fee basis, dedicating over 10,730 hours of time in the case and over $946,000 in expenses without any promise of recovery, payment, or reimbursement. *See* accompanying Declaration of Noam Mandel

- 2 -

4899-9290-4567.v1

Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."); accompanying Declaration of David C. Harrison in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs; Mandel Decl., ¶¶75, 83.  Lead Counsel has not received a single payment for the services it has performed and the expenses it has incurred over the course of nearly three years of litigation.  The risk of no recovery was particularly pronounced here, where highly skilled and experienced defense counsel fiercely contested Lead Plaintiffs' ability to establish falsity, scienter, loss causation, and damages.

Lead Plaintiffs support the Settlement and Lead Counsel's request for attorneys' fees and expenses.  *See* Declaration of Leslie Tarantola (the "Tarantola Decl."), ¶¶9-10, submitted herewith.  Moreover, to date, there have been no objections to the requested attorneys' fees and expenses or to the awards to Lead Plaintiffs.[2]  The absence of objections from the Class supports a finding that Lead Counsel's request for attorneys' fees and expenses is fair and reasonable.[3]

Finally, Lead Plaintiffs seek an aggregate award of $30,000 pursuant to 15 U.S.C. §78u-4(a)(4).  *See* Tarantola Decl., ¶¶12-13.  Lead Plaintiffs monitored and actively participated in the prosecution and resolution of this Litigation, and produced discovery and provided deposition testimony; and their request for an award for the time they expended in representing the Class should be granted.  *See id.*, ¶¶2-8.

---

[2]    Defendants' Counsel received correspondence from Jovelle E. Brockway, a putative Class Member, requesting to comment.  A copy of this correspondence is attached as Ex. B to the Settlement Memorandum.

[3]    The deadline to object to the Settlement, Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses and awards to Lead Plaintiffs is November 25, 2025.  If any objections are timely filed, Lead Counsel will respond in its reply brief to be filed on December 9, 2025.

4899-9290-4567.v1

Accordingly, Lead Counsel respectfully submits that the Court should grant its Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4).

## II.    FACTUAL AND PROCEDURAL HISTORY

The Mandel Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Litigation; nature of the claims asserted; a summary of the work performed for the benefit of the Class; the negotiations leading up to the Settlement; the risks of proceeding with litigation; and other facts supporting this fee and expense application.

## III.    ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

Attorneys who create a common fund for the benefit of a class are entitled to reasonable fees from the fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund."); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("[A]ttorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."); *Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019). The common fund doctrine is designed to "fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) (citing *Goldberger*, 209 F.3d at 47), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

4899-9290-4567.v1

Here, Lead Counsel created a $30 million common fund for the Class and is entitled to reasonable attorneys' fees from the fund. *See Boeing*, 444 U.S. 478; *see also Goldberger*, 209 F.3d at 47. Moreover, fairly compensating Lead Counsel for the risks associated with pursuing this Litigation is vital to the pursuit of "such actions" which "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.      The Court Should Apply the Percentage Method in Awarding Attorneys' Fees to Lead Counsel

In the Second Circuit, the trend has been to award attorneys' fees based on a percentage of the common fund. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) (quoting *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019)) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"); *Aeropostale*, 2014 WL 1883494, at *11-*12.

Courts in the Second Circuit have recognized that the percentage method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart*, 396 F.3d at 121; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund . . . aligns the interests of class counsel with those of the class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the

- 5 -

class members because it bases the attorneys' fees on the results they achieve for their clients . . . ."). Courts have also recognized that the percentage method avoids some of the pitfalls of the lodestar method (*see Goldberger*, 209 F.3d at 48-49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)), and "is consistent with and, indeed, is intended to mirror, practice in the private marketplace." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see also Payment Card Interchange*, 991 F. Supp. 2d at 440 ("The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . ."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) ("[T]he percentage method . . . is consistent with the system typically used by individual clients to compensate their attorneys.").

The percentage of the fund method also finds support in the language of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA states: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have interpreted this provision of the PSLRA as indicating Congress' preference for the percentage method in common fund cases. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

Accordingly, the Court should award attorneys' fees to Lead Counsel based on the percentage method.

### C.   The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit identified several factors that district courts should consider in assessing the reasonableness of a fee award in common fund cases. These factors

4899-9290-4567.v1

include: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *See Goldberger*, 209 F.3d at 50. Each of these factors supports the reasonableness of the fee request here.

This Court analyzes the *Goldberger* factors as part of a three-step approach, *see In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ("*Forex*") (citing *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. July 8, 2014)), *aff'd sub nom. Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019), that begins with the identification of a baseline fee from certain empirical analyses that "divide[] cases into [] ranges of recovery (deciles) based on the amount of the settlement, and then calculate[] the mean and median fee percent, as well as the standard deviation." *Colgate-Palmolive*, 36 F. Supp. 3d at 349-50 (citing Theodore Eisenberg & Geoffrey Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248 (2010); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud. 811 (2010)).  The Court "determine[s] a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity and subject matter." *Forex*, 2018 WL 5839691, at *2.

> This analysis considers three of the *Goldberger* factors: (1) the requested fee in relation to the settlement, (2) whether to award a lower percentage of a higher settlement amount under a 'sliding scale' approach in order to avoid a windfall to Lead Counsel and (3) the magnitude and complexity of the case."

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *2 (S.D.N.Y. Dec. 17, 2020).  "The final step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor – the time and labor expended by counsel." *Id.*

Applying the Court's framework, the baseline fee based on empirical data from National Economic Research Associates, Inc. is 25%.  *See* Edward Flores and Svetlana Starykh, *Recent*

- 7 -

*Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 30 (NERA Jan. 22, 2025) ("NERA Study"), attached hereto as Ex. D (showing the median percentage of plaintiffs' attorneys' fees is 25% for cases settling between $25 million and $100 million).  Here, the baseline fee of 25% warrants an upward adjustment to 33-1/3% to reflect the outstanding result that Lead Counsel achieved on behalf of the Class, the quality of Lead Counsel's representations, the advance stage of the litigation, and Lead Plaintiffs' Counsel's modest lodestar multiplier.[4]

Lead Plaintiffs believe that this "notoriously complex" securities fraud class actions, *see Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019), warrants an upward adjustment to the 25% baseline fee.  This case settled after nearly three years of litigation, a largely unsuccessful motion to dismiss, and class certification.  The securities law claims pursued by Lead Counsel in this case presented unique liability and damages challenges, requiring a higher level of skill in Lead Counsel's written and oral advocacy and a dogged pursuit of discovery over persistent opposition and assertions of privilege over critical communications between the Company and the U.S. Department of Justice ("DOJ") over the Antitrust Revenue Threshold and the timing of its review.  Indeed, the allegedly false and misleading statements and omissions involved forward looking statements regarding the Company's expectations regarding the closing of a corporate transaction and were subject to a more exacting showing of scienter.  Moreover, the case involved debt securities that traded on the over-the-counter market, which made establishing market efficiency for purposes of the *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) presumption of reliance, price impact, and loss causation particularly difficult and dependent on expert analyses and opinion. Mandel Decl., ¶¶38-43.  Notwithstanding these challenges, Lead Counsel was able to secure an

---

[4]   Regardless of whether the Court accepts Lead Plaintiffs' reasonable baseline, Lead Plaintiffs nevertheless submit that an upward adjustment to 33-1/3% is warranted in this case. *See, generally*, Mandel Decl.

4899-9290-4567.v1

exceptional $30 million cash recovery, representing between 38% and 53.4% of the estimated recoverable damages, on behalf of the Class.

The $30 million recovery is an outsized result justifying an upward adjustment to 33-1/3%. According to NERA, the Settlement far exceeds the $14.0 million median settlement value for securities fraud cases settled in 2024 and the 3.8% median settlement value as a percentage of "NERA-Defined Investor Losses" of between $50 million and $99 million for cases settled from January 2015 through December 2024.  *See* NERA Study at 23, 26.  Similarly, according to Cornerstone Research, the $30 million recovery, which represents between 38% and 53.4% of estimated recoverable damages, far exceeds the 8.3% median recovery in securities class actions that, like this one, were resolved after a motion for class certification was decided but before summary judgment motions were filed those cases.  *See* Laarni Bulan and Eric Tam, *Securities Class Action Settlements: 2024 Review & Analysis*, at 14, fig. 14 (Cornerstone Research 2025) (the "Cornerstone Study").[5]  It also far exceeds the median securities fraud settlement in the Second Circuit between 2015 and 2024 of $9.3 million and 7% of "plaintiff-style damages" (Cornerstone Study at 20, App'x 3); and the overall median (7.3%) and average recovery as a percentage of plaintiff-style damages during the same period (11.1%) (Cornerstone Study at 21, App'x 5). Accordingly, the Settlement here recovers multiples of the median recoveries across both NERA and Cornerstone datasets, and represents an outstanding result for the Class.

The "magnitude and complexity" of this case further support "a departure from the lower range typically seen in similar cases." *City of Birmingham*, 2020 WL 7413926, at *3.  This case raised issues of market efficiency for debt securities, price impact, loss causation, and damages.  A

---

[5]  Attached hereto as Ex. E and available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

4899-9290-4567.v1

Rule 23(f) petition was pending in the Second Circuit at the time the case was resolved, and this Settlement eliminates a significant risk that the class could be decertified, effectively ending the case. Each of these complexities, and the exceptional result, justify a 33-1/3% fee.

Moreover, Lead Counsel's request for attorneys' fees equal to 33-1/3% of the Settlement Fund is well within the range of fees awarded by this Court and other courts in this Circuit.[6] *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (Schofield, J.) (awarding fee of 33-1/3% of $44 million settlement); *In re Jernigan Cap., Inc.*, No. 1:20-cv-09575-JLR-KHP, ECF 154 at 1 (S.D.N.Y. May 29, 2025) (awarding 33-1/3% of $12 million settlement, plus interest; representing recovery of between 33.3% and 62% of class's possible recoverable damages) (attached hereto as Ex. B); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33-1/3% of $19.5 million settlement); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding attorneys' fees of 33-1/3% of $31.9 million settlement); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF 38, ¶19 (S.D.N.Y. June 10, 2013) (awarding attorneys' fees of 41% of $18.5 million settlement) (attached hereto as Ex. C).[7]

---

[6]  This Court has awarded interest income on attorneys' fees for the period of time the settlement funds have been deposited into escrow until they are paid to plaintiff's counsel. *See Contant v. Bank of America Corp.*, 2023 WL 6842285, at *1 (S.D.N.Y. Oct. 17, 2023).

[7]  *See also Kohari v. MetLife Grp.*, 2025 WL 100898, at *11 (S.D.N.Y. Jan. 15, 2025) (awarding attorneys' fees of 33-1/3%); *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *1 (S.D.N.Y. Dec. 13, 2024) ) (awarding attorneys' fees of 33-1/3%); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) ("Class counsel's request for one-third of the gross settlement fund is reasonable within this circuit."); *Noom*, 2022 WL 2705354, at *10 ("A fee equal to one-third of a settlement fund is routinely approved in this Circuit."); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (one-third of settlement amount, plus interest); *Guevoura*, 2019 WL 6889901, at *1, *14-*22 (awarding attorneys' fees of 33-1/3%); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, 2022 WL 3127633, at *4 (E.D.N.Y. Apr. 12, 2022) (awarding attorneys' fees of one-third of $10 million as "reasonable and consistent with awards in similar cases in this Circuit"); *In re Facebook,*

4899-9290-4567.v1

**D.      The Lodestar Cross-Check Confirms the Reasonableness of the Requested Attorneys' Fees**

Courts may use the value of services on an hourly basis or lodestar as a "'cross check,'" *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353. The lodestar method involves a two-part analysis,

> first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.

*Aeropostale*, 2014 WL 1883494, at *13. "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the[ir] lodestar."). Here, the lodestar method confirms the reasonableness of Lead Counsel's fee request.

In the aggregate, Lead Plaintiffs' Counsel have spent over 10,730 hours of attorney and paraprofessional time, amounting to $7,925,752 in lodestar based on Lead Plaintiffs' Counsel's

---

*Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9, *11-*12 (S.D.N.Y. Nov. 9, 2015) (awarding attorneys' fees of 33%), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *12-*13 (S.D.N.Y. Dec. 19, 2014) (awarding attorneys' fees of 33-1/3%); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (awarding attorneys' fees of 33% of the approximately $7.8 million settlement and finding award "well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Aeropostale*, 2014 WL 1883494, at *20 (awarding attorneys' fees of 33%); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (finding fee award of one-third of settlement to be "reasonable and 'consistent with the norms of class litigation in this circuit'"); *Maley*, 186 F. Supp. 2d at 370 (awarding attorneys' fees of 33-1/3% and finding requested fees fell "comfortably within the range of fees typically awarded in securities class actions").

4899-9290-4567.v1

current or 2023 hourly rates in contingent cases, which are consistent with rates charged by firms performing comparable work on behalf of plaintiffs and defendants.[8] *See* Mandel Decl., ¶75. Lead Counsel's request on behalf of Lead Plaintiffs' Counsel for attorneys' fees equal to 33-1/3% of the Settlement Amount represents a modest lodestar multiplier of approximately 1.26. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding at 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases).[9] Moreover, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for [the] time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, ¶49 (S.D.N.Y. Aug. 24, 2017); *see also Facebook*, 2015 WL 6971424, at *10.

---

[8]   "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *Hi-Crush*, 2014 WL 7323417, at *15; *Mo. v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Le-Blanc-Sternberg v. Fletcher* 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[9]   *See also Colgate-Palmolive*, 36 F. Supp. 3d at 353 (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable"); *Guevoura*, 2019 WL 6889901, at *18 ("[M]ultipliers of between three and four times . . . have been routinely awarded in this Circuit.").

- 12 -

Additionally, the approximately 1.26 multiplier in this case is below the 1.93 mean multiplier for class action settlements in the Second Circuit and is lower than the 1.79 mean multiplier for securities class actions identified by Eisenberg & Miller. *See* Theodore Eisenberg, Geoffrey Miller & Roy Germano, 92 N.Y.U. L.R. 937, 965, Table 12 (2017). Therefore, a lodestar cross-check, and the resulting modest multiplier, further supports a fee award of 33-1/3%.

**E. The Remaining *Goldberger* Factors Support Lead Counsel's Fee Request**

**1. The Time and Labor Expended by Counsel**

Lead Counsel devoted significant time and resources to the prosecution of this Litigation. Over the course of nearly three years of litigation, Lead Counsel and its paraprofessionals alone devoted over 10,000 hours to the prosecution of this Litigation, on a wholly contingent basis, with no guarantee of compensation. As detailed in the Mandel Declaration, which is being submitted herewith, Lead Counsel performed significant work throughout the Litigation. Lead Counsel, among other things:

- conducted an extensive legal and factual investigation and drafted the Amended Complaint;

- opposed and substantially defeated Defendants' motion to dismiss;

- moved for and obtained class certification (over Defendants' objections);

- engaged in discovery, including serving document requests, interrogatories, and requests for admission on Defendants, serving a subpoena on FINRA, and participating in numerous discovery conferences concerning the scope of discovery and the production of documents;

- reviewed and analyzed over 107,000 pages of documents;

- conducted four fact depositions;

- consulted with a financial expert regarding loss causation and damages;

- participated in two full-day, in-person and two video conference mediation sessions overseen by an experienced mediator, Jed Melnick of JAMS;

- 13 -

- worked with a damages expert to develop a Plan of Allocation that treats the Lead Plaintiffs and the other Class Members fairly and equally;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting materials submitted therewith;

- worked with the Court-appointed Claims Administrator to provide notice to the Class; and

- drafted the final approval motion and supporting materials submitted therewith.

*See generally* Mandel Decl.  Moreover, Lead Counsel will continue to provide services to the Class in connection with the implementation and administration of the Settlement, including responding to Class Members' inquiries, helping with the completion and submission of Proof of Claim and Release forms, overseeing the claims administration process, and working with the Claims Administrator to resolve any issues that may arise.  Lead Counsel's provision of these additional services further supports the reasonableness of the requested fee.  *See Facebook*, 2015 WL 6971424, at *10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."); *see also McIntosh*, 2024 WL 5118192, at *12 (noting that counsel "will incur additional time in connection with implementation of the Settlement").

In sum, Lead Counsel's commitment of over 10,000 hours to the prosecution of this Litigation and procurement of a $30 million cash recovery strongly supports a finding that the 33-1/3% fee request is reasonable.

4899-9290-4567.v1

### 2.    The Magnitude and Complexity of the Litigation

Courts in this District recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also Guevoura*, 2019 WL 6889901, at *5 (Securities class actions are by their very nature complicated, and courts in this Circuit have long recognized that securities class actions are "'notably difficult and notoriously uncertain'" to litigate.) (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'"). This Litigation was no different.

As detailed in the Mandel Declaration and Settlement Memorandum, Lead Plaintiffs' claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 involved complex, contested issues concerning, among other things, the elements of falsity, scienter, and loss causation with respect to unique debt instruments that contained a special mandatory redemption feature and traded in the over-the-counter market. Mandel Decl., ¶¶38-43; Settlement Memorandum, §III.B.3. Moreover, Defendants heavily disputed Lead Plaintiffs' ability to prove damages, which would have been the subject of factual disputes and expert testimony. Navigating these contested and complex factual and legal issues required significant skill, diligence, and expertise from Lead Counsel to achieve the current Settlement. Thus, this factor weighs in favor of the requested fee. *See Aeropostale*, 2014 WL 1883494, at *16 (finding second *Goldberger* factor favored settlement where case involved "difficult, complex, hotly disputed, and expert-intensive issues").

### 3.    The Risk of the Litigation

"Courts have held that this factor [*i.e.*, the risk of litigation] is often 'the most important *Goldberger* factor.'" *In re GSE Bonds*, 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020). Here, the risk of litigation was substantial, including because Lead Plaintiffs pursued this case as a class

- 15 -

4899-9290-4567.v1

action, on a contingency basis. *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*12 (S.D.N.Y. Nov. 30, 2021) ("'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'").

### a.   Contingent Nature of Lead Counsel's Representation

"The Second Circuit . . . recognize[s] that courts should consider the risks associated with . . . undertaking a case on a contingent fee basis." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*21 (S.D.N.Y. Mar. 24, 2014); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *Bank Note Holographics*, 127 F. Supp. 2d at 433 (finding it "appropriate to take [contingent-fee] risk into account in determining the appropriate fee"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Lead Counsel pursued this Litigation on a contingent basis, assuming significant risks without any guarantee of recovery. *See Guevoura*, 2019 WL 6889901, at \*19 ("Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money."). The risk of no recovery in securities class actions, including this Litigation, is real. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *See Veeco*, 2007 WL 4115808, at \*6; *Fosbre v. L.V. Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017) (Robbins Geller case in which summary judgment was granted to defendants after more than six years of litigation where plaintiff's counsel incurred

- 16 -

4899-9290-4567.v1

over \$2.3 million in expenses and worked over 38,600 hours, representing lodestar of approximately \$21.4 million), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).

Lead Counsel's assumption of the contingency-fee risk strongly supports the reasonableness of the requested fee. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.    Risk of Establishing Liability

Lead Plaintiffs believe that there was evidentiary support for their claim that Defendants' statements regarding the timing of the completion of the ADS transaction were materially false and misleading, or omitted material information. At summary judgment and trial, Defendants would have argued, as they did at the motion to dismiss stage, that their statements regarding the DOJ review and the timing of the completion of Waste Management's acquisition of ADS were not false and/or misleading, that the documentary record demonstrated a lack of an intent to defraud, conscious misbehavior, or recklessness by Defendants, and that the risks on the timing of completion of the transaction were adequately and timely disclosed to the market. *See* Mandel Decl., ¶¶38-43; Settlement Memorandum, §III.B.3.

### c.    Risk of Establishing Loss Causation and Damages

"Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *JPMorgan*, 2014 WL 1224666, at *11; *see also AOL*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). This case is no exception. Defendants and their expert would have undoubtedly pointed to the COVID-19 pandemic

and associated market disruption in an attempt to refute causation and damages. Mandel Decl., ¶42. Lead Plaintiffs were prepared to argue that all four Notes experienced a statistically significant price decline on June 24, 2020, when the Company announced a revised merger agreement with ADS, and as a result the Notes would be redeemed pursuant to the special mandatory redemption feature. *Id.* Nevertheless, Defendants' success on any of their arguments posed significant risk to the Class' ability to obtain any recovery. In any event, the parties would inevitably find themselves in a "battle of experts," the outcome of which could not be predicted, and which could have resulted in a small, or no, recovery for the Class.

### 4.    The Quality of Representation Supports the Requested Fee

In assessing the quality of counsel's representation, courts consider, among other things, "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Lead Counsel is recognized as a leader in securities class actions and complex litigations. *See* Robbins Geller Fee Decl., Ex. F (Firm Résumé). Lead Counsel respectfully submits that this factor is best illustrated by the result achieved. In a case where liability and damages were heavily contested, Lead Counsel, through a high-level of skill, hard work, and determination, secured an outstanding $30 million cash recovery for the Class.

Courts also consider the quality of the adversary when evaluating counsel's performance. *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a fee award was that defendants were represented by "one of the country's largest law firms"). Lead Counsel was opposed in this Litigation by experienced and skilled defense counsel at Baker Botts L.L.P., who employed a number of defenses, arguments, and strategies in an attempt to obtain the dismissal of this case,

4899-9290-4567.v1

prevent class certification, and limit their clients' exposure. *See* Mandel Decl., ¶82. Defendants' Counsel also resisted Lead Plaintiffs' discovery efforts throughout the course of the Litigation, requiring Lead Plaintiffs to move the Court for highly relevant documents concerning the Antitrust Revenue Threshold that dated back to March 2019 and to participate in numerous conferences concerning Defendants' privilege assertions and waiver thereof. In the face of this formidable opposition, Lead Counsel persisted and obtained an excellent result for the Class.

### 5.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020) (citation modified). As discussed in detail in §III.C, *supra*, the requested fee of 33-1/3% of the Settlement Amount is well within the range of percentage fee awards that courts in the Circuit have awarded in comparable cases. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations

"Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis." *Kohari*, 2025 WL 100898, at *12; *see also McIntosh*, 2024 WL 5118192, at *12 (same); *Signet*, 2020 WL 4196468, at *21 ("A strong public policy concern exists for rewarding firms for bringing successful securities litigation."); *GSE*, 2020 WL 3250593, at *5 ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage future securities class actions").

4899-9290-4567.v1

Thus, public policy considerations support rewarding Lead Counsel for taking on the risk of pursuing this private securities class action for nearly three years.

### 7. The Class' Reaction to the Fee Request Supports the Requested Fee

The Claims Administrator has disseminated a total of 9,815 Postcard Notices to potential Class Members and nominees. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, Establishment of Call Center Services and Website, and Requests for Exclusion Received to Date, ¶10. The time to object to Lead Counsel's fee request expires on November 25, 2025. To date, no Class Member has objected to the fee and expense amounts set forth in the Notice. The Class' reaction supports a finding that the requested fee is fair and reasonable. *See, e.g.*, *Signet*, 2020 WL 4196468, at *21 ("The absence of any objections to the requested attorneys' fees . . . supports a finding that the request is fair and reasonable.").[10]

### 8. The Fee Request Is Supported by Lead Plaintiffs

Lead Plaintiffs, who have overseen Lead Counsel's litigation activities since the inception of the case, support the fee request. *See* Tarantola Decl., ¶10. Lead Plaintiffs' endorsement of Lead Counsel's fee request supports approval of the request. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request.").

All of these factors weigh in favor of Lead Counsel's fee request.

---

[10] *Flag Telecom*, 2010 WL 4537550, at *29 ("If th[e] important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

4899-9290-4567.v1

## IV. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THE LITIGATION

Lead Counsel respectfully requests an award of $946,662.31 in reasonable costs, charges, and expenses in connection with the prosecution of this Litigation. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (In a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation.") (citation modified); *In re Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (citation modified).

Lead Counsel's expenses are consistent with the stage of the Litigation at the time the Settlement was reached, and include, for example, expert fees, document management costs, deposition and transcript costs, legal research costs, mediation fees, and filing fees. These expenses are routinely charged and awarded in common fund cases. *See, e.g.*, *GSE*, 2020 WL 3250593, at *6 (awarding counsel for, among other things, expert-related expenses, copying costs, online research, and filing and service fees); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

4899-9290-4567.v1

The expenses incurred by Lead Counsel are described in detail in the accompanying Robbins Geller Fee Decl.  To date, there have been no objections to Lead Counsel's expense request.

## V.    LEAD PLAINTIFFS ARE ENTITLED TO REASONABLE AWARDS UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiffs are each seeking an award of $10,000 for the time they spent representing the Class in this Litigation.  *See* 15 U.S.C. §78u-4(a)(4) (providing for an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class.").  Such awards are permitted because they "'compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.'"  *McIntosh*, 2024 WL 5118192, at *13; *Kohari*, 2025 WL 100898, at *12 (same).

Numerous courts in this Circuit have approved reasonable awards to compensate a class representative for his, her, or its time and expenses in representing the class.  *See, e.g.*, *XL Fleet*, 2024 WL 1884483, at *2 (awarding $25,000 to lead plaintiff and $15,000 to each named plaintiff); *Kohari*, 2025 WL 100898, at *13 (approving request of $15,000 to each lead plaintiff); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding $12,500 to lead plaintiff); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL 4596811, at *3 (S.D.N.Y. Aug. 11, 2020) (awarding $10,000 to lead plaintiff); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) ("The Court finds reasonable service awards of $10,000 each to named [p]laintiffs . . . ."); *Toure*, 2012 WL 3240461, at *6 (awarding $10,000 to each named plaintiff).

Here, Lead Plaintiffs actively participated in this Litigation, including reviewing pleadings and briefs, reviewing opinions issued by the Court, collecting and producing documents in response to discovery requests, preparing for and sitting for a deposition, participating in numerous

- 22 -

4899-9290-4567.v1

discussions with Lead Counsel regarding litigation strategy, case developments, and settlement negotiations, monitoring the progress of settlement negotiations, and approving the Settlement. Tarantola Decl., ¶¶2-8.  These types of activities "support awarding reimbursement of expenses to class representatives," *see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009), and the amount requested is consistent with awards in other complex cases.  *See Signet*, 2020 WL 4196468, at *22-*24 (collecting cases and awarding $25,410 to lead plaintiff).

Accordingly, Lead Plaintiffs respectfully request that the Court grant their request for awards for their time and effort in representing the Class.

## VI.    CONCLUSION

Lead Counsel's efforts resulted in an outstanding result for the Class.  In recognition of its efforts, Lead Counsel respectfully requests that the Court grant its motion for an award of attorneys' fees of 33-1/3% of the Settlement Fund, payment of $946,662.31 in litigation expenses, plus interest earned thereon, and awards of $10,000 to each Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  November 10, 2025                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL
DESIREE CUMMINGS
JONATHAN ZWEIG
CHRISTOPHER T. GILROY

*s/ Noam Mandel*
NOAM MANDEL

4899-9290-4567.v1

420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com
cgilroy@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for the Class

- 24 -

**WORD COUNT CERTIFICATION**

Pursuant to III.B.1 of the Honorable Lorna G. Schofield's Individual Rules and Procedures for Civil Cases, the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 7,462 words.  This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

4899-9290-4567.v1