UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re WASTE MANAGEMENT SECURITIES :   Civil Action No. 1:22-cv-04838-LGS
LITIGATION                             :

                                       :   <u>CLASS ACTION</u>

                                       :

                                       :   ORDER AWARDING ATTORNEYS' FEES
                                       :   AND EXPENSES AND AWARDS TO LEAD
                                       :   PLAINTIFFS PURSUANT TO 15 U.S.C.
                                       x   § 78u-4(a)(4)

———————————————————— 

LORNA G. SCHOFIELD, District Judge:

This matter having come before the Court on December 16, 2025, on the motion of

Robbins Geller Rudman & Dowd LLP ("RGRD") for an award of attorneys' fees to itself and the

Law Office of David Harrison PLLC ("Harrison Law Office," and together with RGRD for the

purpose of this motion, "Lead Plaintiffs' Counsel"),[1] expenses and awards to Lead Plaintiffs (the

"Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein,

having found the Settlement of this Litigation to be fair, reasonable and adequate, and otherwise

being fully informed of the premises and good cause appearing therefore.

     1.      This Order incorporates by reference the definitions in the Stipulation of

Settlement dated July 10, 2025 (the "Stipulation"), and all capitalized terms used, but not defined

herein, shall have the same meanings as set forth in the Stipulation.

     2.      This Court has jurisdiction to enter this Order, over the subject matter of this

Litigation, and over all of the Settling Parties and all Class Members.

---

[1] By Order dated March 31, 2025, RGRD was appointed Lead Counsel to represent the class in this action. David C. Harrison worked with, and under the direction of, RGRD, initially as a partner of Lowey Dannenberg, P.C. with others at that firm, and then as a member of the Harrison Law Office.

3.     The Court granted preliminary approval on August 26, 2025, and notice of the Settlement and Settlement Hearing was sent to Class Members.

4.     In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee -- set by the court -- to be taken from the fund."[2] *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  "What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion . . . ." *Id.*  The reasonableness of a fee in this Circuit is evaluated by considering the *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50.

5.     District courts in this Circuit may use one of two methods as a starting point to analyze attorneys' fees in common fund cases.  *Id.*  One method is the "lodestar" method, by which the district court multiplies the reasonable hours billed by a reasonable hourly rate.  *See id.* at 47.  Once that computation is made, the district court may adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys.  *See id.*  The second method is the "percentage of the fund" method, which is the trend in this Circuit.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *superseded on other grounds by Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *accord In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).  Under the percentage method, the fee is a reasonable percentage of the total value of the settlement fund created for the class.  *See*

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, emphases, footnotes and citations are omitted, and all alterations are adopted.

*Goldberger*, 209 F.3d at 47.  The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121.  In contrast, the lodestar method creates "an unexpected disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits." *Id.*  The percentage method is used to evaluate the attorneys' fees in this case, with the lodestar used as a cross-check.

6.      Lead Plaintiffs' Counsel are hereby awarded attorneys' fees of 30% of the $30,000,000 Settlement Amount, or $9,000,000, plus interest at the same rate earned by the Settlement Fund.  The timing of payment shall be as follows: 60%, or $5,400,000, plus applicable interest, shall be payable immediately, and the remaining 40%, or $3,600,000, plus applicable interest, shall be payable after substantially all of the distributions to Class Members from the Settlement Fund are complete.

7.      Lead Plaintiffs' Counsel are also awarded litigation expenses in the amount of $946,662.31, plus interest at the same rate earned by the Settlement Fund, which is payable upon entry of this Order.  The Court finds that the amount of fees awarded is fair, reasonable and appropriate under the "percentage-of-recovery" method.

8.      This award of attorneys' fees and expenses to be paid from the Settlement Fund is based on an analysis and application of the *Goldberger* factors as well as empirical research on attorneys' fees awards, as follows:

(a)      The Settlement has created a gross Settlement Fund of $30,000,000 in cash, pursuant to the terms of the Stipulation, from which the following will be paid: attorneys' fees, service awards to Lead Plaintiffs, litigation expenses, claims administrator fees, costs and

expenses, broker reimbursement, taxes and settlement payments to Class Members who submit valid Proof of Claim forms.

(b)    The attorneys' fees sought have been reviewed and approved as reasonable by Lead Plaintiffs, who are institutional investors involved in the prosecution and resolution of the Litigation.

(c)    Over 9,900 copies of the Postcard Notice were disseminated to potential Class Members stating that Lead Counsel would move for attorneys' fees in an amount not to exceed 33-1/3% of the Settlement Amount and for expenses in an amount not to exceed $1,000,000, plus interest on both amounts, and no objections to the fees or expenses were filed by Class Members.

(d)    Lead Plaintiffs' Counsel pursued the Litigation on a contingent basis.

(e)    The claims against Defendants involve complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain.

(f)    Had Lead Plaintiffs' Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from the Defendants.

(g)    Lead Plaintiffs' Counsel conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy.

(h)    Lead Plaintiffs' Counsel devoted at least 10,730 hours of attorney and paraprofessional time pursuing the Litigation on behalf of the Class, with a lodestar value of approximately $7,925,752 and a lodestar multiplier of 1.14, considering the 30% attorneys' fee award, to achieve the Settlement.

(i)      A baseline of attorneys' fees equal to 25% of the gross Settlement Amount would be consistent with awards in similar cases involving recoveries of a similar size according to empirical data from National Economic Research Associates, Inc.  *See* Edward Flores & Svetlana Starykh, Nat'l Econ. Rsch. Assocs., *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* 30 (2025).  Between 2015-2024, for settlements valued between $25 million and $100 million, median attorneys' fees were 25.0% (the same as in 1996-2014).  *Id.*  It is well established that as the size of the settlement increases, the percentage allocated to attorneys' fees and expenses generally declines.  *See, e.g.*, *id.* (starting at 33.0% median attorneys' fees for settlements valued at less than $5 million and declining to 18.0% median attorneys' fees for settlements valued at $1 billion or more); *see also Colgate-Palmolive*, 36 F. Supp. 3d at 349 ("In order to avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases."); *Verardo v. Progressive Cas. Ins. Co.*, No. 22 Civ. 1714, 2025 WL 1558336, at *1 (S.D.N.Y. June 2, 2025) ("[E]mpirical data reflects a sliding scale such that the fee percentage decreases as the amount of the settlement increases and therefore avoids a windfall to class counsel."); *Goldberger*, 209 F.3d at 51-52 (criticizing the use of a fixed percentage fee benchmark for all cases and noting that "it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case").

(j)      The 33-1/3% requested by Lead Counsel is higher than the benchmark of approximately 25%.  Some upward variance is warranted in this case to reflect consideration of the *Goldberger* factors, resulting in an appropriate fee percentage in this case of 30%.  Specifically, Lead Plaintiffs' Counsel expended significant time and labor in pursuing a complex case and litigating the case.  This case settled after nearly three years of litigation, a motion to

dismiss and class certification.  Complexities included, among other things, Defendants' persistent opposition and assertions of privilege over critical communications between the Company and the U.S. Department of Justice concerning antitrust review.  Despite these and other complexities, Lead Plaintiffs' Counsel secured a $30 million recovery, representing between 38% and 53.4% of estimated recoverable damages payable to class members.  That recovery exceeds the $14 million median settlement value for securities fraud cases settled in 2024 and the 3.8% median settlement value as a percentage of "NERA-Defined Investor Losses" of between $50 million and $99 million for cases settled between January 2015 and December 2024.  *See* Flores & Starykh, *supra*, at 23 fig. 22, 26.  Comparing against another study, the Settlement exceeds the 8.3% median recovery in securities class actions that were resolved after a motion for class certification was decided but before summary judgment motions were filed. *See* Laarni Bulan & Eric Tam, Cornerstone Rsch., *Securities Class Action Settlements: 2024 Review & Analysis* 14, fig. 14 (2025).  Finally, the Settlement Amount exceeds the median securities fraud settlement in the Second Circuit between 2015 and 2024 of $9.3 million and 7.0% of "plaintiff-style damages," and the overall median (7.3%) and average (11.1%) recovery as a percentage of plaintiff-style damages during the same period.  *See id.* at 20 app. 3, 21 app. 5. These factors support some upward variance.  *Cf. Volino v. Progressive Cas. Ins. Co.*, No. 21 Civ. 6243, 2025 WL 871602, at *2 (S.D.N.Y. Mar. 20, 2025) (providing an upward variance from a 25% benchmark to 28% because, among other reasons, "Class Counsel expended significant time and labor in pursuing a novel liability theory in a complex case and litigating the case through every stage except trial").

   (k) Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public

interest." *Goldberger*, 209 F.3d at 51.  If attorneys' fees are routinely set too low, it may create

"poor incentives to bringing large class action cases." *Colgate-Palmolive*, 36 F. Supp. 3d at 352.

> Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Plaintiffs' Counsel's fees should reflect the important goal of serving as an inducement for lawyers to make similar efforts in the future. However, no special public policy concern differentiates this case from other securities cases. This factor does not warrant an increase in Lead Counsel's recovery percentage.

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014, 2020 WL

7413926, at *4 (S.D.N.Y. Dec. 17, 2020) (quoting *Wal-Mart*, 396 F.3d at 96).

(l)      In light of the result obtained and the efforts of Lead Plaintiffs' Counsel, an upward adjustment of the 25% baseline fee to 30% is warranted in this Litigation and does not result in a windfall to Lead Plaintiffs' Counsel.

9.      Pursuant to 15 U.S.C. § 78u-4(a)(4), each Lead Plaintiff: (i) Seafarers Officers & Employees Pension Plan, (ii) Seafarers Money Purchase Pension Plan and (iii) United Industrial Workers Pension Plan, is awarded $10,000 for the time they spent representing the Class, for a total of $30,000, which is immediately payable upon entry of this Order.

10.      Any appeal or other challenge affecting this Order on the Fee Motion shall in no way disturb or affect the finality of the Settlement.

11.      In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.  It is hereby

**ORDERED** that Lead Plaintiffs' Counsel is awarded attorneys' fees of 30% of the $30,000,000 Settlement Amount, or $9,000,000, plus interest at the same rate earned by the Settlement Fund, to be paid from the Settlement Fund.  The two firms that are Lead Plaintiffs'

Counsel may determine the allocation of the attorneys' fees between them.  The timing of payment shall be as follows: 60%, or $5,400,000.00, plus any applicable interest, shall be payable immediately, and the remaining 40%, or $3,600,000.00, plus any applicable interest, shall be payable after substantially all of the distributions to Class Members from the Settlement Fund are complete.  Lead Plaintiffs' Counsel is also awarded reimbursement of litigation expenses in the amount of $946,662.31, plus interest at the same rate earned by the Settlement Fund, which is payable upon entry of this Order.  It is further

**ORDERED** that Lead Plaintiffs Seafarers Officers & Employees Pension Plan, Seafarers Money Purchase Pension Plan and United Industrial Workers Pension Plan are each awarded $10,000, for a total of $30,000, for the time they spent representing the Class, which is payable upon entry of this Order.  It is further

**ORDERED** that Lead Plaintiffs' Counsel shall file a status letter once all distributions to Class Members from the Settlement Fund are complete.  The status letter shall: (i) include a final accounting of (a) the total Settlement Fund, (b) the Claims Administrator's fee, costs and expenses, (c) attorneys' fees, costs and expenses, (d) Lead Plaintiffs' service fees, (e) any other deduction from the Settlement Fund before payment to Class Members and (f) the recovery in dollars and as a percentage of the Lead Plaintiffs' estimated damages for the Class in the aggregate and per Class Member, including any assumptions used in calculating these amounts; (ii) seek authorization to pay and distribute the remaining outstanding attorneys' fees granted in this Order; and (iii) include as an exhibit a brief proposed order entering final judgment and dismissing this case.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 157.

Dated: February 17, 2026
New York, New York

8

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**